WOOD RIVER TOWNSHIP *et al.*, Plaintiffs-Appellants, v. WOOD RIVER TOWNSHIP HOSPITAL *et al.*, Defendants-Appellees.

Fifth District    No. 5—01—0193

Opinion filed June 17, 2002.—Rehearing denied July 23, 2002.

Rod Pitts, of Law Offices of Rod Pitts, of Wood River, and Francis X.

Duda and Fortis M. Lawder, both of Anderson & Gilbert, of St. Louis, Missouri, for appellants.

Christopher W. Byron and Lori C. Imsland, both of Gallop, Johnson & Neuman, L.C., and Donald G. Mueller, Jr., of Bryan Cave, L.L.P., both of St. Louis, Missouri, for appellees Wood River Township Hospital, Bradford L. Pulaski, Margaret K. Edel, Max Emery, Gary D. Kessler, Kenneth Miller, and Peggy L. Rucker.

John T. Papa, of Callis, Papa, Jackstadt & Halloran, of Granite City, and Dawn M. Canty, of Katten Muchin Zavis, of Chicago, for appellee Nuveen Premier Municipal Income Fund, Inc.

Hope G. Nightingale, of Litchfield Cavo, of Chicago, and Steven H. Schwartz, of Brown & James, of St. Louis, Missouri, for appellee Cincinnati Insurance Company.

Donald L. Smith, of Hoagland, Fitzgerald, Smith & Pranaitis, of Alton, for appellees Mark Von Nida and Fred Bathon.

JUSTICE HOPKINS delivered the opinion of the court:

Wood River Township (the township) and Gregory G. Kuehnel, Nancy A. Harris, Vincent B. Milazzo, Sr., Bill Stewart, and Tom McRae (individual taxpayers) (collectively referred to as plaintiffs) appeal the trial court's order granting a motion to dismiss and for injunctive relief that had been filed by Wood River Township Hospital (the hospital), Bradford L. Pulaski, Margaret K. Edel, Max Emery, Gary D. Kessler, Kenneth Miller, and Peggy L. Rucker (the board of directors), Nuveen Premier Municipal Income Fund, Inc. (Nuveen), Cincinnati Insurance Company (Cincinnati), Amalgamated Bank of Chicago (Amalgamated), Mark Von Nida, and Fred Bathon (collectively referred to as defendants). On appeal, plaintiffs contend that the trial court erred when it dismissed plaintiffs' causes of action. The court found that the township lacked the standing to sue and that the individual taxpayers could not sustain a cause of action in equity because the individual taxpayers had an adequate remedy at law, *i.e.*, they could proceed in a taxpayer's objection proceeding. We affirm.

## FACTS

The hospital was organized in 1948 and operated under Article 170 of the Township Code (60 ILCS 1/170—5 *et seq.* (West 2000)). The hospital is a body corporate and politic separate and distinct from the township, and it is governed by a board of directors appointed by the township's board of trustees. The hospital is authorized to levy *ad valorem* taxes on real property in the township for the purpose of

"maintaining and operating the public hospital and for the purpose of repairing, improving, extending, and equipping the public hospital." 60 ILCS 1/170—30 (West 2000). The hospital also has the authority to issue bonds for "the purpose of acquiring by purchase, constructing, improving, extending, repairing, or equipping" the hospital (60 ILCS 1/170—35(a) (West 2000)) and for "the purpose of (i) constructing, reconstructing, repairing, remodeling, extending, equipping, improving, and acquiring a site or sites for a hospital building or buildings or (ii) refunding any revenue bonds previously issued from time to time in relation to the operation of the hospital when deemed necessary or advantageous in the public interest" (60 ILCS 1/170—50(a) (West 2000)). Section 170—35 requires that the resolution for issuing the bonds be submitted to a referendum of the electors of the township. 60 ILCS 1/170—35(d) (West 2000). Bonds issued under section 170—50, entitled "revenue bonds," can be authorized by a resolution that is not submitted to the electors of the township. 60 ILCS 1/170—50(a) (West 2000).

Both sections 170—35 and 170—50 include a paragraph that incorporates the Omnibus Bond Acts (5 ILCS 70/8 (West 2000)). 60 ILCS 1/170—35(e), 170—50(b) (West 2000). Under the Omnibus Bond Acts, governmental entities, such as the hospital, are given supplemental grants of power pursuant to various acts enumerated in the Omnibus Bond Acts for the purpose of giving the governmental entities "equal access to the municipal bond market." 5 ILCS 70/8(b) (West 2000). The Local Government Debt Reform Act (30 ILCS 350/1 *et seq.* (West 2000)) is one of the acts listed in the Omnibus Bond Acts. 5 ILCS 70/8(a) (West 2000).

Under the Local Government Debt Reform Act, a governmental unit can issue general obligation bonds, also referred to as "alternate bonds," that are issued in lieu of revenue bonds and that are payable from any revenue source of the governmental unit, including *ad valorem* real estate property taxes. 30 ILCS 350/15 (West 2000). The alternate bonds issued under the Local Government Debt Reform Act are authorized through a backdoor referendum procedure. 30 ILCS 350/15(b) (West 2000). The backdoor referendum procedure is set out both in section 15(b) and in section 5 (30 ILCS 350/5, 15(b) (West 2000)). Section 15(b) provides that a notice of the bond resolution is to be published in a newspaper of general circulation in the governmental unit, and it sets out the information that is to be included in the published notice, which includes the number of voters required to sign a petition requesting that the issuance of the alternate bonds be submitted to a referendum of voters, the time for filing the petition, the date of the prospective referendum, and a statement that identi-

fies any revenue source that will be used to pay the principal and interest on the alternate bonds. 30 ILCS 350/15(b) (West 2000).

On April 28, 1993, the board of directors of the hospital passed "Resolution No. 1993—1" under the backdoor referendum procedure provided in sections 5 and 15(b) of the Local Government Debt Reform Act (30 ILCS 350/5, 15(b) (West 2000)). The resolution stated that the hospital would issue alternate bonds totalling $13.5 million pursuant to section 15 of the Local Government Debt Reform Act (the resolution called it the "Alternate Bond Act"), for the purpose of refunding already existing revenue bonds and for the purposes of reconstructing, repairing, remodeling, extending, equipping, and improving the hospital. Resolution 1993—1 also provided for notice to be published in accordance with section 15(b) of the Local Government Debt Reform Act, and it set out the contents of the notice. The notice allowed 30 days for the filing of any petitions requesting that the proposed bond issuance be submitted to a referendum of the voters. The notice was published, but no petitions requesting a submission to a referendum of voters were filed during the 30-day period allowed under the published notice. Resolution 1993—1 was adopted by the hospital's board of directors on December 22, 1993. Additionally, resolution 93—9, which levied *ad valorem* real estate taxes for the years 1994 through 2012 for the payment of the principal and interest on the bonds issued under resolution 1993—1, was also adopted by the hospital's board of directors on this same date.

The hospital's board of directors also adopted resolution 93—8 on December 22, 1993. Resolution 93—8 authorized the issuance of $11.225 million in bonds pursuant to section 9—105 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/9—105 (West 2000)) (the tort bonds) and levied *ad valorem* real estate taxes for the years 1995 through 2013 pursuant to section 9—107 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/9—107 (West 2000)). Section 9—105 allows for the issuance of bonds by the "board of a local taxing entity" without the bond resolution being submitted to a referendum of voters.

Bonds were issued under the hospital's board of directors' two resolutions. Nuveen and Cincinnati were the purchasers of the bonds issued under the hospital's resolutions. Amalgamated is the escrow agent for the receipt of the pledged taxes for the payment of the bonds and is also the holder of the insurance reserve fund created by the issuance of the tort bonds. The resolutions levying the taxes under the two resolutions were filed with the county clerk on December 30, 1993. The hospital closed and discontinued services on July 21, 2000.

Plaintiffs filed their complaint for a declaratory judgment and for injunctive relief against defendants on July 3, 2000. Plaintiffs asked that the trial court declare the alternate bonds and the tort bonds issued by the hospital void and that the *ad valorem* real estate taxes for 1999 be declared void because they were levied under the void bond issues. Plaintiffs claimed that the bond issues are void because they were not authorized by a referendum of voters as required by section 170—35 (60 ILCS 1/170—35 (West 2000)), that the notice published for the backdoor referendum did not conform to the requirements of section 15(b) (30 ILCS 350/15(b) (West 2000)), that the pledge of taxes through 2012 is not authorized under Article 170 of the Township Code and that the hospital's board of directors' authority to levy future taxes terminated upon the closing of the hospital, that the pledged taxes are an illegal attempt to bind future boards of directors of the hospital, that the taxes levied on the tort bonds exceed the rate limitation imposed by law on taxes levied for general corporate purposes by the hospital (*i.e.*, three mills on each dollar of assessed value of taxable township property as provided in section 170—30(a) of the Township Hospitals Act (60 ILCS 1/170—30(a) (West 2000)), and that the proceeds from the tort bonds have been used for an unauthorized purpose. Plaintiffs also asked that the court enter a preliminary injunction directing the *county treasurer and/or the escrow agent* (Amalgamated) to hold all 1999 *ad valorem* real estate taxes collected from the alternate bonds and tort bonds until the court entered a final ruling as to the bonds' validity, that the court issue a preliminary injunction directing Amalgamated to hold the balance of the insurance reserve fund created by the proceeds of the tort bonds, and that the county clerk and the county treasurer be enjoined from taking any further action in future years to extend, collect, or disburse extended *ad valorem* real estate taxes levied by the alternate bonds and the tort bonds.

Plaintiffs also sought the recovery of the money paid and received by Nuveen and Cincinnati on the principal and interest of the alternate bonds and the tort bonds from 1993 to 1999. Likewise, plaintiffs sought the recovery of costs and attorney fees expended for this cause of action.

Defendants filed motions to dismiss plaintiffs' complaint under both section 2—615 and section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 2000)). Defendants raised affirmative defenses alleging that plaintiffs had no standing to sue and that the individual plaintiffs had an adequate remedy at law. Defendants concluded, therefore, that the individual plaintiffs could not maintain a cause of action in equity.

Following a hearing, the trial court held that the township lacked the standing to sue because the township is not a taxpayer and is not injured in its corporate capacity. The trial court further held that the basis for the individual taxpayers' cause of action is that the hospital has allegedly illegally passed a tax through its two bond issues. The court determined that the essence of the individual taxpayers' claim is an objection to real estate taxes but that the individual taxpayers seek declaratory and injunctive relief, which are equitable remedies. Because the individual taxpayers had an adequate remedy at law for their tax claims, by pursuing a tax-objection claim, the court determined that it had no jurisdiction to consider the individual taxpayers' equity claims. Therefore, the trial court granted defendants' motions to dismiss. Plaintiffs appeal.

## ANALYSIS

### Standard of Review

■ The granting of a motion to dismiss for a lack of standing under section 2—619(a)(9) (735 ILCS 5/2—619(a)(9) (West 2000)) is reviewed *de novo*. *Glisson v. City of Marion*, 188 Ill. 2d 211 (1999). The lack of standing is an affirmative matter that negates a cause of action completely; therefore, a *de novo* review requires this court to consider whether the dismissal was proper as a matter of law. *Glisson*, 188 Ill. 2d at 220-21. Where a cause of action is dismissed during the hearing of a section 2—619 motion on the pleadings and affidavits, a reviewing court must determine if there is a genuine issue of material fact and whether a defendant is entitled to a judgment as a matter of law. *Nichol v. Stass*, 192 Ill. 2d 233 (2000).

### Discussion of Issues

■ Plaintiffs first contend that the trial court's finding that the township lacked the standing to sue is erroneous. Having standing to sue in Illinois requires that there be some injury in fact to a legally cognizable interest. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). A claimed injury, whether actual or threatened, must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely to be prevented or redressed by the requested relief. *Greer*, 122 Ill. 2d at 492-93. In a declaratory judgment action, there must be an actual controversy between the parties, with the party requesting the declaration possessing some personal claim, status, or right that is capable of being affected by such relief. *Greer*, 122 Ill. 2d at 493. The lack of standing is an affirmative defense, to be pleaded and proved by the party asserting it. *Greer*, 122 Ill. 2d at 494.

Plaintiffs assert that the affidavit of Kuehnel, the township supervisor, establishes the township's injury in fact. Kuehnel states in his affidavit that the township will suffer an injury in fact because defendants' actions in issuing the bonds "substantially, directly, and adversely" affect the township in its corporate capacity. Kuehnel also stated: "As Supervisor, I hear regularly from voters and from taxpayers in the Township[,] and the most common complaint is that real estate taxes are too high, particularly for person[s] on a fixed income. Elderly residents on social security comprise [sic] a large portion [sic] of the residents within the Township." Plaintiffs argue that because the bonds issued by defendants have imposed excessive taxes on the residents of the township, the residents will be reluctant to file a petition to request a referendum to approve a tax increase over the maximum rate allowed for a township by statute. Thus, the township claims it is injured in its corporate capacity because it will be unable to impose more taxes and, in turn, will be unable to provide adequate services for its residents. Plaintiffs assert that the township does have the standing to sue.

■ We find that the township does not have an injury in fact to establish its standing to sue. The township's claimed injury in fact is its inability to impose additional real estate taxes because of the high taxes already being collected due to defendants' actions. This is a vague, speculative, and conclusory claim of injury in fact. There is no evidence that the township could not impose additional taxes. Further, a common complaint in any governmental unit is that the residents believe that their taxes are too high. Even if the township unsuccessfully tried to impose higher taxes, the result could not be fairly traceable to defendants' actions. Additionally, even if, *arguendo*, plaintiffs' request for relief from the taxes were granted, there is no assurance that the township would be able to impose other taxes as a result. Thus, there is no conclusive evidence that the relief requested would prevent or redress the alleged injury. The township has suffered no injury in fact to give it the standing to sue, so the trial court's dismissal of the township from the cause of action because of the township's lack of standing was proper as a matter of law.

■ The trial court also dismissed the individual taxpayers' cause of action. The court found that the essence of the individual taxpayers' claims was that the taxes that were imposed through the bond levies were illegal. The trial court determined that the individual taxpayers had an adequate remedy at law through the tax-objection process and that, therefore, the trial court had no jurisdiction to consider plaintiffs' equity claim.

Generally, equitable jurisdiction is barred for tax relief when there

is an adequate remedy at law. *Clarendon Associates v. Korzen*, 56 Ill. 2d 101 (1973); *Communications & Cable of Chicago, Inc. v. Department of Revenue*, 275 Ill. App. 3d 680 (1995); *R.D. Werner Co. v. Leyden Fire Protection District*, 91 Ill. App. 3d 587 (1980). The adequate remedy at law is to pay the taxes under protest and file an objection. *North Pier Terminal Co. v. Tully*, 62 Ill. 2d 540 (1976). There are two exceptions to this general rule: (1) when the tax is alleged to be unauthorized by law or (2) when the tax is levied upon property exempt from taxation. *Communications & Cable of Chicago, Inc.*, 275 Ill. App. 3d at 683. For a tax to be unauthorized by law, the complaining party must allege that the tax itself is invalid. *Communications & Cable of Chicago, Inc.*, 275 Ill. App. 3d at 683. However, equitable relief is not available where a complaint merely alleges procedural errors or irregularities in the taxing process. See *Communications & Cable of Chicago, Inc.*, 275 Ill. App. 3d at 683. A tax is unauthorized when the taxing body has no statutory power to tax. *R.D. Werner Co.*, 91 Ill. App. 3d at 592.

Here, the individual taxpayers have alleged that the bonds, and therefore the taxes levied thereunder, are unauthorized by law. Plaintiffs claim that the bonds were not issued legally because the hospital did not publish a complete notice as required by statute. Plaintiffs also claim that the bonds were issued without submitting the bond resolutions to a referendum of voters. We disagree.

A review of the statutory authority that governs the hospital's issuance of bonds establishes that the hospital had the authority to issue the bonds without a referendum in the case of the tort bonds and with a backdoor referendum in the case of the alternate bonds. There was no lack of statutory authority, so the bonds were authorized by law. Further, the relevant statutes provided for the levying of taxes to pay for the bonds, so the taxes levied by the hospital were also authorized by law.

Plaintiffs alleged that the published notice only included two revenue sources but did not include all of the sources of payment for the bonds. Plaintiffs claim that the notice was therefore illegal. In all other respects, the published notice met the requirements of the statute. The claim that the published notice for the bond resolution was defective alleges, at most, a procedural error or irregularity. Thus, plaintiffs did not allege facts to show that the bonds, and therefore the taxes, were unauthorized by law. The record reflects that the individual taxpayers also filed taxpayer objections for their 1999 taxes. Plaintiffs have an adequate remedy at law, which they are pursuing. Therefore, the trial court had no equitable jurisdiction to consider the individual taxpayers' equitable cause of action. There is no genuine is-

sue of material fact, and defendants are entitled to a judgment as a matter of law. The trial court properly dismissed plaintiffs' cause of action on this basis.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

MAAG, P.J., and GOLDENHERSH, J., concur.