First Division
June 4, 2007

No. 1-06-0098

| | | |
|---|---|---|
| SANTOS ALVAREZ and MARIE PEREZ ALVAREZ; | ) | Appeal from |
| PHILLIP DOUGLAS; ANDREW DRATT and SOPHIE | ) | the Circuit Court |
| DRATT; FAYE H. NAZON; POLISH WOMEN'S | ) | of Cook County |
| ALLIANCE OF AMERICA; EVANSTON PLAZA | ) | |
| L.L.C.; and DAVID LAWLESS, Individually and on | ) | |
| Behalf of All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | 05 CH 2822 |
| | ) | |
| v. | ) | |
| | ) | |
| MARIA PAPPAS, Treasurer and ex-officio Collector of | ) | |
| Cook County, Illinois, | ) | Honorable |
| | ) | Julia M. Nowicki, |
| Defendant-Appellee. | ) | Judge Presiding |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court of Cook County dismissing their first amended complaint pursuant to section 2-619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(5) (West 2004)).  The circuit court held that plaintiffs' claims for a return of duplicate real estate tax payments were barred by the five-year statute of limitations in section 20-175 of the Property Tax Code (the Code) (35 ILCS 200/20-175 (West 2004)).  Plaintiffs appeal, contending that section 20-175 does not apply to their claims and that the circuit court therefore erred in dismissing their complaint.  For the reasons that follow, we affirm.

Prior to setting forth the allegations in plaintiffs' complaint, we find it helpful to review the following background information regarding real estate tax billing procedures in Cook County.  Defendant, the Cook County treasurer, is vested with the duty to bill, collect and disburse to the appropriate tax districts the general real estate taxes levied upon real estate in

1-06-0098

Cook County. 35 ILCS 200/20-85 (West 2004). By January 31 of each year, estimated tax bills setting out the first installment of property taxes for the preceding year, payable in that year, are prepared and mailed to the taxpayer by defendant. See 35 ILCS 200/21-30 (West 2004). The first installment of taxes on the estimated tax bills is computed at 50% of the total of each tax bill for the preceding year. 35 ILCS 200/21-30 (West 2004). By June 30 of each year, actual tax bills are prepared and mailed. These bills set out the total taxes due and the amount of estimated taxes billed in the first installment, and state the balance of taxes due for that year as computed by subtracting the amount of the first installment from the total taxes due that year. 35 ILCS 200/21-30 (West 2004).

On September 13, 2005, plaintiffs filed a six-count amended complaint against defendant alleging that they had made duplicate real estate tax installment payments and seeking a return of those payments. The amended complaint sought relief under the following theories: (1) conversion; (2) a violation of plaintiffs' equal protection and due process guarantees; (3) unlawful taking without just compensation; (4) unjust enrichment; (5) the Illinois Uniform Disposition of Unclaimed Property Act (the Unclaimed Property Act) (765 ILCS 1025/0.05 *et seq*. (West 2004)); and (6) the Illinois State Employees Pension System.

In the amended complaint, plaintiffs alleged that defendant was the only treasurer in the State who refused to refund a duplicate real estate tax payment when the refund was requested more than five years after the duplicate payment was made. Plaintiffs asserted that defendant had no authority to collect, deposit, or disburse to tax districts any duplicate payments of real estate taxes, and that, for in excess of the past 15 years, defendant has engaged in policies and practices

2

concerning those duplicate payments that were unauthorized by statute. Specifically, plaintiffs complained that defendant accepted and disbursed duplicate payments with knowledge that the relevant tax bill had already been satisfied, posted the duplicate payment on the official Collector's Warrant Books as an additional payment and failed to credit duplicate payments of first installment bills to the second installment bill for that year's taxes, refunded duplicate payments only when an application was submitted within five years of the date on which the duplicate payment was made, failed to give the recipient of a refunded duplicate payment any of the earnings made on such funds while in defendant's possession, failed to provide adequate notice to taxpayers of their right to obtain a refund of duplicate payments, and failed to turn over any unclaimed duplicate payments to the State Treasurer. Plaintiffs also alleged that, as of August 1, 2005, defendant began to mail to taxpayers written notice of the existence of duplicate payments on their real estate tax bills and the manner in which such payments could be refunded.

As set out in the amended complaint, plaintiffs Santos Alvarez and Maria Perez Alvarez were billed for the first installment of their 1989 real estate taxes. The Alvarezes held a tax escrow account with Citibank, which disbursed funds from that account to pay the first installment on February 10, 1990. The Alvarezes also issued a check to defendant for the first installment on March 4, 1990. In July, 1990, defendant issued the second installment on the Alvarezes' 1989 real estate taxes. The Alvarezes paid this bill on August 6, 1990, and Citibank paid that same bill on August 11, 1990.

Plaintiff Phillip Douglas was a McDonald's franchisee who was required to maintain a real estate tax escrow account with McDonald's Corporation for payment of real estate taxes.

3

Douglas paid the second installment of his 1998 real estate taxes on October 22, 1999, and McDonald's Corporation also issued a check to defendant for the second installment on November 1, 1999.

Plaintiffs Andrew and Sophie Dratt held a mortgage on their condominium with Homeside Lending, which required the Dratts to maintain an escrow account held by Homeside for payment of real estate taxes. The Dratts received the second installment of their 1998 real estate taxes in September 1999. On November 1, 1999, Homeside tendered payment to defendant for that bill, and on November 4, 1999, the Dratts also issued a check to defendant for the second installment.

Plaintiff Faye Nazon failed to pay the 1994 real estate taxes on property that she owned, and those taxes were sold to a buyer in April 1996. Defendant issued the second installment on Nazon's 1995 real estate taxes in August 1996, and Nazon paid that installment on October 9, 1996. On October 18, 1996, the buyer of Nazon's 1994 real estate taxes also paid the second installment on Nazon's 1994 real estate taxes. When Nazon subsequently redeemed her property from the 1994 tax sale on August 13, 1998, she was required to pay all of the real estate taxes levied upon her property that were paid by the tax buyer. This redemption included the buyer's payment of the second installment of Nazon's 1995 real estate taxes, resulting in a duplicate payment of that installment.

Count I of the amended complaint alleged that the duplicate payments were plaintiffs' private property, that defendant permanently converted that property for her own benefit five years after the date the duplicate payments were made, and that such conversion damaged

4

plaintiffs in the amount of each duplicate payment.

Count II alleged that defendant's retention of the duplicate payments constituted a taking of plaintiffs' private property without just compensation and a violation of plaintiffs' equal protection and due process rights. Count III similarly alleged that defendant's retention of plaintiffs' private property constituted a taking without just compensation and a violation section 1983 of the Civil Rights Act (See 42 U.S.C. §1983 (2000).

Count IV alleged that defendant was unjustly enriched by permanently retaining plaintiffs' duplicate payments five years after they were made. Count V alleged that the duplicate payments were abandoned property under the Unclaimed Property Act. Plaintiffs claimed that defendant, as a government entity, was required under the Unclaimed Property Act to turn over that property to the State Treasurer for the benefit of plaintiffs and state pensioners.

Count VI alleged that plaintiff David Lawless was entitled to pension benefits from the Illinois State Employees Pension System, and that the pension system was funded, in part, by income the Illinois State Treasurer earned on money turned over to her as custodian of unclaimed property. Plaintiffs claimed that "the infusion of unclaimed duplicate payments now in the custody or under the control of the defendant" would improve the financial stability of Lawless's state pension fund, and that defendant's failure to turn over those funds to the State Treasurer deprived Lawless of the financial security to which he is entitled.

The complaint requested the following relief: (1) certification of the matter as a class action; (2) a declaration that the duplicate payments were plaintiffs' private property, and that defendant's retention of that property constituted an unconstitutional taking without just

compensation and a violation of plaintiffs' due process and equal protection rights; (3) entry of a temporary, preliminary or permanent injunction or writ of *mandamus*, providing for appropriate equitable and injunctive relief to ensure the return of plaintiffs' property and for an accounting of all duplicate payments, enjoining defendant from engaging in the policies and practices complained of, and requiring defendant to deposit all duplicate payments with the State Treasurer as required under the Unclaimed Property Act; and (4) judgment in the amount of the duplicate payments and all income earned thereon.

Defendant moved to dismiss plaintiffs' complaint under section 2-619(a)(5) of the Code of Civil Procedure. Defendant argued that plaintiffs' claims arose under section 20-175 of the Code and were barred by that section's five-year statute of limitations. See 35 ILCS 200/20-175 (West 2004)). The circuit court granted the motion and dismissed plaintiffs' complaint. Plaintiffs now appeal that dismissal.

Whether a cause of action was properly dismissed under section 2-619(a)(5) of the Code based on the statute of limitations presents a question of law that we review *de novo*. Ferguson v. City of Chicago, 213 Ill. 2d 94, 99 (2004). Moreover, our resolution of this appeal raises a question of statutory interpretation, namely, whether plaintiffs' claims for a return of duplicate tax payments are governed by section 20-175 of the Code and thereby subject to that section's five-year statute of limitations. An issue of statutory interpretation presents a question of law and is also reviewed *de novo*. Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund, 216 Ill. 2d 590, 595 (2005).

On appeal, plaintiffs contend that the circuit court erred in dismissing their complaint

based on the statute of limitations. Specifically, plaintiffs assert that the duplicate payments tendered to defendant were not tax payments, that their requests for return of those payments did not implicate section 20-175 of the Code, which applies to refunds of tax payments due to erroneous assessments, and that the court erred in when it applied that section's five-year limitations period to dismiss their complaint.

Our analysis is guided by well-established principles of statutory interpretation. The primary rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. In re Marriage of Rogers, 213 Ill. 2d 129, 136 (2004). The best evidence of the legislature's intent is the language of the statute, which must be given its plain and ordinary meaning. In re Donald A.G., 221 Ill. 2d 234, 246 (2006). In determining the plain and ordinary meaning of statutory terms, we must consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. People v. Davis, 199 Ill. 2d 130, 135 (2002). In interpreting a statute, we also must presume that when the legislature enacted a law, it did not intend to produce absurd, inconvenient or unjust results. Progressive Universal Insurance Co. v. Liberty Mutual Fire Insurance Co., 215 Ill. 2d 121, 134 (2005).

Section 20-175 of the Code, entitled "Refund for erroneous assessments or overpayments," provides, in relevant part:

> "If any property is twice assessed for the same year, or
> assessed before it becomes taxable, and the erroneously assessed
> taxes have been paid either at sale or otherwise, or have been
> overpaid by the same claimant or by different claimants, the

1-06-0098

> County Collector *** shall refund the taxes to the proper claimant.
>
> *** A claim for refund shall not be allowed unless a petition is
>
> filed within 5 years from the date the right to a refund arose." 35
>
> ILCS 200/20-175 (West 2004)).

As an initial matter, plaintiffs assert that the duplicate payments were not "tax payments" but, rather, represented mistaken payments of real estate tax assessments that had already been satisfied. As such, plaintiffs maintain that the mistaken payments constituted "tangible property" that was subject to the Unclaimed Property Act (765 ILCS 1025/8.1 (West 2004)). Plaintiffs also assert that, because the duplicate payments were not tax payments, their requests for a return of those payments were not claims for a "refund." We reject plaintiffs' contention for two reasons.

First, plaintiffs provide no authority for the proposition that the duplicate payments were not "tax payments" but, rather, represented unclaimed tangible property. A point raised on appeal that is not supported by citation to relevant authority is waived under Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)). McCarthy v. Denkovski, 301 Ill. App. 3d 69, 74 (1998). Accordingly, plaintiffs' contention is waived.

Second, we find plaintiffs' distinction between "tax payments" and "mistaken payments" to be without consequence. Plaintiffs received installment bills for their real estate taxes and thereafter sent payment to defendant in satisfaction of those bills. Clearly, these payments were "tax payments," and we decline to interpret them otherwise.

Contrary to plaintiffs' assertion, the character of these payments is not changed merely because the tax bills had already been satisfied when the payments at issue were made. Rather,

8

the duplicate payments, even if made by mistake, amounted to "overpayments" of plaintiffs' real estate taxes. Although the Code does not define "overpaid," to overpay is generally defined as "to pay more than (an amount due)" or "to pay (a person) in excess." Webster's Unabridged Dictionary Second Edition 1383 (1998); see also Detrana v. Such, 368 Ill. App. 3d 861, 868 (2006) (noting that the dictionary can be used to ascertain the ordinary and popular meaning of a word). The Supreme Court interpreted the term "overpayment" in a similar manner in United States v. Dalm, 494 U.S. 596, 108 L. Ed. 2d 548, 110 S. Ct. 1361 (1990). In Dalm, the Court considered the meaning of the term "overpayment" as it was used in a federal limitations period applicable to a "[c]laim for credit or refund of an overpayment of any tax imposed by [the Internal Revenue Code of 1954]." 26 U.S.C. §6511(a) (1982). In rejecting a distinction between refund actions and suits for funds wrongfully retained, the Court noted that "[t]he commonsense interpretation is that *a tax is overpaid when a taxpayer pays more than is owed, for whatever reason or no reason at all*." (Emphasis added.) Dalm, 494 U.S. at 609 n.6, 108 L. Ed. 2d at 562 n.6, 110 S. Ct. at 1368-69 n.6.

Here, too, by sending duplicate payments to defendant, plaintiffs paid more than what was owed on their real estate taxes. That these duplicate payments were made by mistake is of no consequence. We therefore find that the duplicate payments were tax "overpayments," and reject plaintiffs' argument that those payments were tangible personal property. Accordingly, the Unclaimed Property Act, which "provides a procedure whereby certain personal property, presumed abandoned, is placed in the custody of the State for its eventual return to its rightful owner" (Canel v. Topinka, 342 Ill. App. 3d 65, 69 (2003)), does not apply in this case.

9

We also reject plaintiffs' contention that their requests for a return of those duplicate payments were not claims for a "refund." A refund, as used in the tax context, "is the amount a taxpayer or reporting entity would receive from the government due to an overpayment of taxes." Black's Law Dictionary 1281 (6th ed. 1990); see also Webster's Unabridged Dictionary Second Edition 1622 (1998) (defining refund as "to give back or restore (esp. money))." In this case, plaintiffs requested a return of overpaid taxes. We find that these requests are properly characterized as claims for a *refund* of those overpayments.

Having characterized plaintiffs' duplicate payments as real estate tax "overpayments," and their requests for a return of those payments as claims for a "refund," we must now determine whether those refund claims are within the scope of section 20-175 and thereby subject to its five-year statute of limitations.

Plaintiffs assert that section 20-175 does not govern their claims because it applies only when property is erroneously assessed, through a double or a premature assessment, and that erroneous assessment is then either paid or overpaid. Plaintiffs claim that, in this case, "there was no erroneous assessment and there was no overpayment caused by an erroneous assessment," and therefore section 20-175 does not apply. Defendant responds that the statute applies to refund claims for overpaid taxes and to refund claims for taxes paid due to erroneous assessments.

The title of section 20-175, "Refund for erroneous assessments or overpayments," suggests that the statute applies to both refunds for erroneous assessments and to refunds for overpaid taxes. Moreover, after reviewing the text of section 20-175, we believe that the statute

is most reasonably interpreted as providing for refunds in two distinct situations: when taxes have been erroneously assessed, due to a property being either twice assessed in the same year or assessed before it becomes taxable; and when taxes have been overpaid by the same claimant or by different claimants. See 35 ILCS 200/20-175 (West 2004).

Additionally, a review of section 20-175's legislative history supports defendant's argument that the legislature intended the statute to provide a mechanism by which taxpayers could obtain a refund for overpaid taxes such as those at issue in this case. Section 286 of the Revenue Act of 1939 is the predecessor statutory provision to section 20-175. As enacted in 1939, section 286 provided:

> "If any real or personal property shall be twice assessed for the same year, or assessed before it becomes taxable, and the taxes so erroneously assessed shall have been paid either at sale or otherwise, or have been *twice paid by different claimants*, the county court *** shall direct the county collector to refund such taxes ***." (Emphasis added.) Ill. Rev. Stat. 1939, ch. 120, par. 767.

The General Assembly amended the text of section 286 in 1975. Public Act 79-184 deleted the phrase "twice paid by different claimants," and in its place substituted "overpaid by the same claimant or by different claimants, the County Collector, upon being satisfied of the facts in the case shall refund such taxes to the proper claimant ***." See Pub. Act 79-184, §1, eff. Oct.1, 1975. As a result, subsequent to the 1975 amendment, section 286 provided, in relevant part:

1-06-0098

> "If any real or personal property shall be twice assessed for the same year, or assessed before it becomes taxable, and the taxes so erroneously assessed shall have been paid either at sale or otherwise, or have been *overpaid by the same claimant or by different claimants*, the County Collector *** shall refund such taxes to the proper claimant ***." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 120, par. 767.

During the floor debate on the legislation in the Senate, Senator Moore stated that "House Bill 184 provides for *refunds* by the county collector in cases *where an installment of real estate taxes has been paid twice in error.* *** *This does give the county collector the authority to refund such payments.* It is of ... there's nothing on the books now that allows them to do it. (Emphasis added.) 79th Ill. Gen. Assem., Senate Proceedings, May 15, 1975, at 227 (statements of Senator Moore). During the floor debates on the legislation in the House, Speaker Schlickman stated that, "House Bill 184, as it was originally introduced, created a new paragraph in the Revenue Act providing for a *refund* by the county collector *in case any installment of real estate taxes is paid twice in error.* It was the opinion of the Cook County Collector that instead *** an existing paragraph should be amended." (Emphasis added.) 79th Ill. Gen. Assem., House Proceedings, March 19, 1975, at 12-13 (statements of Speaker Schlickman). Speaker Schlickman later added that, "House Bill 184 concerns itself with the problem that confronts *real estate property taxpayers who* either, inadvertently, *have paid an installment twice.* *** Presently, there is no statutory authority in the Revenue Act by which the county collectors can

12

make a refund of over-payment by taxpayers. This Bill as amended *** fills that void ***."

(Emphasis added.) 79th Ill. Gen. Assem., House Proceedings, March 20, 1975, at 48 (statements

of Speaker Schlickman). These statements conclusively demonstrate that the 1975 amendment

broadened the scope of section 20-175, and that the legislature intended that section to thereafter

provide for refunds when a real estate tax installment bill has been twice paid in error.

Of equal importance, when the language of a statute admits to more than one

construction, the interpretation that is reasonable should prevail and we should avoid an

interpretation that would produce absurd, unjust, unreasonable, or inconvenient results. In re

Application of County Collector of Du Page County for Judgment for Taxes for Year 1993, 187

Ill. 2d 326, 332 (1999). Plaintiffs' interpretation of section 20-175 would produce an absurd and

unjust result. To adopt plaintiffs' interpretation would leave taxpayers without a statutory

mechanism by which to obtain a refund for duplicate tax payments made in error. This is not the

result that the legislature intended, and to interpret the statute in such a manner would work a

hardship on taxpayers.

In conclusion, considering the language of the statute as well as its legislative history, we

agree with defendant that section 20-175 of the Code applies to refund claims for duplicate tax

payments such as those made by plaintiffs in this case. Adopting this interpretation gives effect

to the legislature's intent and avoids the absurd and unjust results that would follow were we to

adopt plaintiffs' interpretation of the statute. Accordingly, we find that plaintiffs' refund claims

for duplicate real estate tax payments are governed by section 20-175 of the Code.

In light of that conclusion, the question of whether or not plaintiffs voluntarily made the

13

duplicate payments is moot. See Scoa Industries, Inc. v. Howlett, 33 Ill. App. 3d 90, 96 (1975) ("The question of whether or not a payment is voluntary is moot if and when the legislature has, as a matter of grace, provided a statutory remedy for refund"). Where, as here, the legislature has enacted a statutory remedy for a refund, a taxpayer who has voluntarily or involuntarily paid his taxes can recover them only by virtue of that statute. Weil-McLain Co. v. Collins, 395 Ill. 503, 507 (1946); Scoa Industries, Inc., 33 Ill. App. 3d at 96. Therefore, plaintiffs' exclusive remedy for recovering their duplicate tax payments lies in section 20-175, and the equitable relief plaintiffs request is unavailable. See Bass v. South Cook County Mosquito Abatement District, 236 Ill. App. 3d 466, 467-68 (1992) ("[E]quity will not assume jurisdiction to grant relief where an adequate remedy at law exists"); Wood River Township v. Wood River Township Hospital, 331 Ill. App. 3d 599, 605-06 (2002) ("[E]quitable jurisdiction is barred for tax relief when there is an adequate remedy at law").

Having so concluded, we must now determine whether plaintiffs' claims were properly dismissed as being untimely under the five-year statute of limitations in section 20-175. Section 20-175 of the Code specifically provides that the five-year statute of limitations begins to run on "the date the right to a refund arose." 35 ILCS 200/20-175 (West 2004)). In this case, because plaintiffs' tax bills had already been paid when they tendered the duplicate payments, plaintiffs had a right to a refund of those payments on the date that they were made. Therefore, we conclude that the five-year statute of limitations commenced on the date that plaintiffs made the duplicate payments.

This conclusion is consistent with federal tax cases addressing the issue of accrual. For

1-06-0098

example, in <u>Dalm</u>, the Supreme Court held that a federal limitations period, applicable to refund claims for overpaid taxes, began to run when a taxpayer tendered payment of a tax to the government, not when the taxpayer discovered that the payment was erroneous. <u>Dalm</u>, 494 U.S. at 609 n.7, 108 L. Ed. 2d at 562 n.7, 110 S. Ct. at 1369 n.7. In so holding, the Court noted:

> "The very purpose of statutes of limitations in the tax context is to bar the assertion of a refund claim after a certain period of time has passed, without regard to whether the claim would otherwise be meritorious. *That a taxpayer does not learn until after the limitations period has run that a tax was paid in error*, and that he or she has a ground upon which to claim a refund, *does not operate to lift the statutory bar*." (Emphasis added.) <u>Dalm</u>, 494 U.S. at 609 n.7, 108 L. Ed. 2d at 562 n.7, 110 S. Ct. at 1369 n.7.

See also <u>Sundance Homes, Inc. v. County of DuPage</u>, 195 Ill. 2d 257, 269 (2001) ("[An] action [for a refund] accrues when the tax is paid").

Given our determination that the statute of limitations began to run on the date that the duplicate payments were made, plaintiffs do not dispute that their claims for a refund of those overpayments were untimely. All of plaintiffs' duplicate payments were made between March 4, 1990, and November 4, 1999. Plaintiffs' first amended complaint was filed on September 13, 2005, more than five years after the duplicate payments were made. Accordingly, plaintiffs' claims were untimely, and their first amended complaint was properly dismissed.

For the reasons stated, the judgment of the circuit court of Cook County dismissing

15

1-06-0098

plaintiffs' first amended complaint is affirmed.

Affirmed.

GARCIA and R. GORDON, JJ., concur.