KT WINNEBURG, LLC, Petitioner-Appellant, v. THE CALHOUN COUNTY BOARD OF REVIEW *et al.*, Respondents-Appellees.

Fourth District    No. 4—10—0062

Opinion filed September 9, 2010.

Richard J. Ringhausen (argued), of Hardin, for appellant.

Charles H. Burch, State's Attorney, of Hardin (Patrick Delfino, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Christopher E. Sherer (argued), Special Assistant State's Attorney, of Springfield, for appellees.

JUSTICE KNECHT delivered the opinion of the court:

In April 2008, taxpayer, KT Winneburg, LLC, purchased the real property in question—namely, approximately 88 tracts of land situated in Calhoun County—in bulk at a foreclosure sale. Subsequently, respondent, S. Brandi Fester, Calhoun County supervisor of assessments (Supervisor), changed the classification of the property from farmland to residential and reassessed it accordingly, resulting in an increase in taxpayer's property-tax liability.

In April 2009, following an administrative hearing, respondent, the Calhoun County Board of Review (Board of Review), issued decisions against taxpayer on all lots, upholding the Supervisor's assessments. In April 2009, taxpayer filed its initial "Complaint for Review of Assessment/Objection to Assessment" in the circuit court, in which it sought an order requiring the Supervisor to assess the lots as farmland instead of residential. In December 2009, taxpayer amended its complaint to include a count for declaratory relief. In January 2010, the court entered judgment in favor of respondents and against taxpayer as to taxpayer's claims for *mandamus* and declaratory relief.

Taxpayer appeals, arguing the circuit court erred by finding (1) section 10—30 of the Property Tax Code (Code) (35 ILCS 200/10—30 (West 2008)) does not require the Supervisor to assess and value the lots in question as farmland and (2) section 10—31 of the Code (35

ILCS 200/10—31 (West Supp. 2009)) does not apply retroactively to the April 2008 foreclosure sale. We find we lack subject-matter jurisdiction and, accordingly, dismiss the appeal.

## I. BACKGROUND

In June 1995, a real estate developer purchased 420 acres of real estate, including the land making up the 88 lots in question, which was subsequently classified as farmland, pursuant to section 10—30 of the Code (35 ILCS 200/10—30 (West 2008)), for purposes of property-tax assessment and valuation. From 1997 to 2005, several developers platted some or all of the 420 acres, including the 88 lots in question, into 9 subdivisions. In 2005, 35 of the 88 lots were reclassified and reassessed as residential.

In October 2007, taxpayer purchased mortgages on the 88 lots in question and, in December 2007, taxpayer foreclosed on the mortgages. In April 2008, taxpayer purchased all 88 lots in bulk at a foreclosure sale. In October 2008, 48 of the remaining 53 lots classified and assessed as farmland were reclassified and reassessed as residential.

In March 2009, the Board of Review held a hearing on taxpayer's complaint regarding the Supervisor's 2008 assessment of all 88 properties. Because the record on appeal lacks a record or report of proceedings before the Board of Review, the evidence and arguments presented are not before us. In April 2009, the Board of Review upheld the Supervisor's assessments.

In April 2009, taxpayer filed its "Complaint for Review of Assessment/Objection to Assessment" in the circuit court. Taxpayer asserted the foreclosure sale did not constitute an "initial sale," as that term is used in section 10—30 of the Code, where it serves as a trigger cutting off the preferential valuation and assessment of certain parcels of land as farmland, provided by the same statute. See 35 ILCS 200/10—30(c) (West 2008). In its prayer for relief, taxpayer asked the court to conduct a *de novo* review of the lots' assessment and sought a *mandamus* requiring respondents to apply the preferential assessment and valuation method to taxpayer's land and to refund the excess taxes collected. Neither party presented the court with the record or report of proceedings before the Board of Review.

Effective August 14, 2009, the General Assembly amended section 10—30 of the Code (35 ILCS 200/10—30 (West Supp. 2009)) and enacted new section 10—31 (35 ILCS 200/10—31 (West Supp. 2009)), which explicitly excludes initial sales and mortgage-foreclosure sales from the events triggering loss of the preferential treatment. In November 2009, taxpayer obtained leave of the circuit court to file an amended complaint to address the new law. Taxpayer's amended

complaint included a second count, in which it sought a declaratory judgment to the effect section 10—31 applied retroactively to the April 2008 foreclosure sale.

The parties stipulated to the facts of the case, including the ownership and tax-assessment histories of the 88 lots. They also "stipulated" to (1) the circuit court's jurisdiction of the parties and the subject matter and (2) an actual controversy between the parties as to the applicability of section 10—31.

In January 2010, the circuit court entered judgment for respondents on both counts of taxpayer's amended complaint. The court specifically found, *inter alia*, (1) the April 2008 foreclosure sale constitutes an "initial sale" discontinuing the preferential treatment of the lots provided for by section 10—30, and (2) section 10—31 does not apply retroactively to the foreclosure sale.

This appeal followed.

## II. ANALYSIS

On appeal, taxpayer argues the circuit court erred by denying its preferential tax treatment under section 10—30 of the Code (35 ILCS 200/10—30 (West 2008)). Specifically, taxpayer argues the foreclosure sale of the property in question does not constitute an "initial sale" as that term is used in section 10—30. Alternatively, taxpayer argues section 10—31 (35 ILCS 200/10—31 (West Supp. 2009)) should apply retroactively to exempt the foreclosure sale from triggering loss of the preferential assessment. Respondents respond (1) the court lacked subject-matter jurisdiction to hear petitioner's complaint, (2) the foreclosure sale was an "initial sale," and (3) section 10—31 should not apply retroactively. We agree with respondents the circuit court lacked subject-matter jurisdiction.

## A. Subject-Matter Jurisdiction

"A reviewing court must ascertain its jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the issue." *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213, 902 N.E.2d 662, 664 (2009). "This court has no choice but to dismiss appeals when we lack jurisdiction." *R&G, Inc. v. Midwest Region Foundation for Fair Contracting, Inc.*, 351 Ill. App. 3d 318, 325, 812 N.E.2d 1044, 1049 (2004). "If a trial court did not have jurisdiction, the parties cannot confer jurisdiction on a reviewing court merely by taking an appeal." *Greer v. Illinois Liquor Control Comm'n*, 185 Ill. App. 3d 219, 221, 541 N.E.2d 216, 217 (1989). Subject-matter jurisdiction cannot be waived, stipulated to, or consented to by the parties, nor can it be conferred by estoppel. *Jones v. Industrial Comm'n*, 335 Ill. App. 3d 340, 343, 780 N.E.2d 697, 700 (2002). Thus,

even though respondents submitted to the circuit court's exercise of jurisdiction in this case, it remains their prerogative to challenge it on appeal.

"Subject[-]matter jurisdiction refers to a court's power both to adjudicate the general question involved and to grant the particular relief requested." *In re Estate of Gebis*, 186 Ill. 2d 188, 192, 710 N.E.2d 385, 387 (1999). Thus, whether the circuit court had jurisdiction here depends, in part, on the type of case presented.

A circuit court may obtain subject-matter jurisdiction over a challenge to a property-tax assessment or valuation through either of two mutually exclusive procedures: (1) administrative review (35 ILCS 200/16—195 (West 2008)) or (2) tax objection (35 ILCS 200/23—5 (West 2008)). *Madison Two Associates v. Pappas*, 227 Ill. 2d 474, 477, 884 N.E.2d 142, 146 (2008). " '[T]he character of a motion should be determined from its content, and a court is not bound by the title of a document given by a party.' [Citation.] Thus, a court should examine the substance of a document to determine how it should treat the document. [Citation.]" *R&G*, 351 Ill. App. 3d at 321, 812 N.E.2d at 1046-47. This proposition holds equally true for petitions in the circuit court.

Due to its ambiguous title, allegations, and prayer for relief, taxpayer's complaint is not particularly amenable to categorization. Accordingly, we consider, in turn, whether the circuit court in this case obtained subject-matter jurisdiction over this case under either procedure. We then consider whether any exceptions would permit a circuit court to hear taxpayer's petition outside these procedures. We conclude the court lacked subject-matter jurisdiction.

## B. Administrative Review

As a petition for administrative review, taxpayer's complaint did not vest the circuit court with subject-matter jurisdiction because the Code does not provide for administrative review of board-of-review decisions.

Article VI, section 9, of the Illinois Constitution of 1970 provides: "Circuit Courts shall have such power to review administrative action as provided by law." Ill. Const. 1970, art. VI, §9. The Code provides a two-step administrative process for property-tax challenges by taxpayers. First, the taxpayer may file a complaint seeking reassessment of his property with the county board of review, which rules on the assessment after providing notice to any necessary parties and an opportunity to be heard. See 35 ILCS 200/16—55 (West 2008). Second, "any taxpayer dissatisfied with the decision of a board of review *** as such decision pertains to the assessment of his or her property for

taxation purposes \*\*\* may \*\*\* appeal the decision to the Property Tax Appeal Board [(Appeal Board)] for review." 35 ILCS 200/16—160 (West 2008). "All [such] appeals shall be considered de novo and the \*\*\* Appeal Board shall not be limited to the evidence presented to the board of review of the county." 35 ILCS 200/16—180 (West 2008).

After a taxpayer has taken both of these administrative steps, "[f]inal administrative decisions of the \*\*\* Appeal Board are subject to review under the provisions of the Administrative Review Law" (735 ILCS 5/3—101 through 3—113 (West 2008)). 35 ILCS 200/16—195 (West 2008). The Code does not provide similarly for review of decisions by county boards of review in the circuit courts. Thus, circuit courts lack subject-matter jurisdiction of petitions for administrative review of board-of-review decisions.

Taxpayer asserts, to the contrary, section 16—160 of the Code permits its petition in the circuit court. Section 16—160 states, in part:

> "If a petition is filed [with the Appeal Board] by a taxpayer, the taxpayer is precluded from filing objections based upon valuation, as may otherwise be permitted by [s]ections 21—175 [(governing entry of judgment against delinquent properties)] and 23—5 [(governing payment under protest and tax objections)]. However, any taxpayer not satisfied with the decision of the board of review \*\*\* as such decision pertains to the assessment of his or her property need not appeal the decision to the Property Tax Appeal Board before seeking relief in the courts." 35 ILCS 200/16—160 (West 2008).

Taxpayer argues the latter sentence allows it to seek administrative review of a board of review's decision without first proceeding to the Appeal Board. We disagree. The legislature's juxtaposition of the quoted clauses and usage of the transitional term "however" suggest they are to be read together. Such a reading shows section 16—160 permits a taxpayer pursuing relief under sections 21—175 and 23—5 to forgo appealing the board of review's decision to the Appeal Board. It does not empower circuit courts to review decisions by boards of review under the Administrative Review Law.

Moreover, while the Code requires the Appeal Board to make a record of proceedings before it (see 35 ILCS 200/16—190 (West 2008)), there is no parallel requirement of the county boards of review. Indeed, it appears in this case no such record was made. The Administrative Review Law requires the administrative agency that rendered the decision to "file an answer which shall consist of the original or a certified copy of the entire record of proceedings under review, including such evidence as may have been heard by it and the findings and

decisions made by it." 735 ILCS 5/3—108(b) (West 2008). Further, "[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the [circuit] court." 735 ILCS 5/3—110 (West 2008). The legislature did not provide for boards of review to make a record of proceedings because it did not intend for their decisions to be reviewable under the Administrative Review Law.

In this case, while the circuit court's admission of the stipulated evidence exceeded its review powers, it had no choice because it was never presented with a record to review. (We also note, on appeal, we review the agency's decision, not the circuit court's. See *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212, 886 N.E.2d 1011, 1019 (2008). Thus, as an action for administrative review, this case presents us with no record to review on appeal.) We conclude the court lacked jurisdiction of taxpayer's claims when construed as claims for administrative review.

### C. Tax Objection

Although taxpayer appears to have conceded its amended complaint was not a tax-objection complaint, we next consider whether the circuit court obtained jurisdiction of it as such because (1) we have an independent duty to examine matters of subject-matter jurisdiction and (2) the parties' labels regarding petitions are not controlling and, thus, can provide only limited guidance. We conclude taxpayer's amended complaint was insufficient to vest the court with jurisdiction under the Code's provisions for tax objections. Further, we conclude taxpayer did not proceed pursuant to any exceptions to the tax-objection procedure.

### 1. *Limited Jurisdiction*

Tax objections are governed by principles of limited jurisdiction. Article VI, section 9, of the Illinois Constitution of 1970 provides: "Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction ***." Ill. Const. 1970, art. VI, §9. "Where the legislature enacts a comprehensive statutory scheme, creating rights and duties which have no counterpart in common law or equity, the legislature may define the 'justiciable matter' in such a way as to preclude or limit the jurisdiction of the circuit courts." *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504*, 128 Ill. 2d 155, 165, 538 N.E.2d 524, 529 (1989).

> "When the circuit court's power to act is controlled by statute, the circuit court is governed by the rules of limited jurisdiction and

must proceed within the statute's strictures. [Citation.] Any action taken by the circuit court that exceeds its jurisdiction is void and may be attacked at any time." *Gebis*, 186 Ill. 2d at 193, 710 N.E.2d at 387.

Because we find (1) the tax-objection complaint has no counterpart in common law or equity and (2) the legislature intended the tax-objection proceeding "to provide a complete remedy" with few exceptions (see 35 ILCS 200/23—15(b)(1) (West 2008)), we conclude the tax-objection proceeding affords the circuit court only limited jurisdiction. Thus, the circuit court may proceed only within the statute's strictures.

## 2. *Tax-Objection Complaint*

Title 8 of the Code governs tax objections. See 35 ILCS 200/23—5 through 23—45 (West 2008). As prerequisites to pursuing a tax objection in the circuit courts, a taxpayer must (1) receive a disfavorable decision from the county board of review (35 ILCS 200/23—10 (West 2008) ("An objection to an assessment for any year shall not be allowed by the court *** if an administrative remedy was available by complaint to the *** board of review under *** [s]ection 16—115, unless that remedy was exhausted prior to the filing of the tax[-]objection complaint")) and (2) pay all taxes due under protest (35 ILCS 200/23—5 (West 2008)).

Tax-objection complaints must contain "[(1)] on the first page a listing of the taxing districts against which the complaint is directed and [(2)] a summary of the reasons for the tax objections set forth in the complaint." 35 ILCS 200/23—10 (West 2008). "The complaint shall name the county collector as defendant and shall specify any objections that the plaintiff may have to the taxes in question." 35 ILCS 200/23—15(a) (West 2008).

In this case, the circuit court lacked jurisdiction of taxpayer's amended complaint when we construe it as a tax-objection complaint. Nothing in the record shows taxpayer even alleged having paid the property taxes on the disputed lots under protest. The complaint did not contain, on the first page or anywhere else, a listing of the taxing districts. Taxpayer failed to name the statutory party, the county collector, as defendant. Under principles of limited jurisdiction, these requirements were jurisdictional, and taxpayer's failure to comply with them precluded the circuit court from hearing its claims.

## 3. *Exceptions to Tax-Objection Procedures*

Illinois law provides three exceptions to the tax-objection procedure. First, the procedure does not apply to any claim the real estate is exempt from taxation. See 35 ILCS 200/23—5 (West 2008)

(exempting taxpayers objecting to property tax on a claim "that the property is exempt from taxation" from the payment-under-protest requirement); 35 ILCS 200/23—25(a) (West 2008) ("No taxpayer may file an objection as provided in *** [s]ection 23—10 on the grounds that the property is exempt from taxation, or otherwise seek a judicial determination as to tax[-]exempt status, except as provided in [s]ection 8—40 and except as otherwise provided in this [s]ection ***"). Second, the procedure does not apply to a claim for any relief (1) provided for elsewhere in the Code and (2) described therein as exclusive. 35 ILCS 200/23—15(b)(1) (West 2008). Third, circuit courts enjoy jurisdiction to provide equitable relief if the entire tax is unauthorized by law. See *Wood River Township v. Wood River Township Hospital*, 331 Ill. App. 3d 599, 606, 772 N.E.2d 308, 314 (2002). "A tax is unauthorized when the taxing body has no statutory power to tax." *Wood River Township*, 331 Ill. App. 3d at 606, 772 N.E.2d at 314.

Taxpayer's amended complaint presents us with none of these exceptions. Taxpayer does not allege the lots are exempt from taxation or the tax is unauthorized, and the Code does not provide for the specific relief taxpayer requests. Thus, the circuit court could not have obtained subject-matter jurisdiction to hear taxpayer's amended complaint under any of the exceptions to the tax-objection procedure.

As we find the circuit court lacked jurisdiction to hear this case, we do not have jurisdiction to review its decision and must dismiss this appeal.

### III. CONCLUSION

For the reasons stated, we dismiss taxpayer's appeal.

Appeal dismissed.

POPE and McCULLOUGH, JJ., concur.