**2020 IL 124744**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 124744)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
MIGUEL DELEON, Appellee.

*Opinion filed September 24, 2020.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Kilbride, Karmeier, Theis, Neville, and Michael J. Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    At issue in this case is whether section 112a-11.5 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/112A-11.5 (West 2018)), which permits the issuance of a protective order in a crime involving domestic violence, a sexual offense, or stalking, is unconstitutional on its face and as applied to defendant. The circuit court of Cook County held the statute unconstitutional, as violative of the

fifth and fourteenth amendments to the United States Constitution (U.S. Const., amends. V, XIV) and of article I, section 2, and article I, section 10, of the Illinois Constitution (Ill. Const. 1970, art. I, §§ 2, 10). The circuit court also held that the statute shifted the burden to defendant, in conflict with the Civil No Contact Order Act (740 ILCS 22/204, 215.5 (West 2018)). We now reverse the circuit court's judgment.

¶ 2                                BACKGROUND

¶ 3     Defendant Miguel Deleon was charged by indictment with four counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(1), (a)(2) (West 2018)). The conditions of defendant's bond release included a prohibition against contacting the victim or visiting her home, school, or workplace. Pursuant to section 112A-11.5 of the Code (725 ILCS 5/112A-11.5 (West 2018)), the State's Attorney filed a petition for a plenary civil no-contact order mandating defendant refrain from contacting the victim, harassing or stalking her, and entering her place of employment. Defense counsel filed a memorandum opposing the no-contact order, asserting that section 112A-11.5 was unconstitutional.

¶ 4     At a hearing in March 2019, the circuit court orally pronounced that section 112A-11.5 was unconstitutional, both on its face and as applied, although an evidentiary hearing was never held nor evidence proffered by counsel as to the section's unconstitutionality as applied to defendant. The court found that the statute allows the State to make a *prima facie* case for the issuance of a protective order by producing the indictment without requiring the alleged victim to testify and be subject to cross-examination, in violation of due process. The court also found the statute's requirement that the defendant present evidence of a meritorious defense to rebut the *prima facie* evidence violative of defendant's constitutional protections against self-incrimination (*id.* § 112A-11.5(a)(1)). Additionally, the court found that the statute improperly shifts the burden of persuasion to the defendant. The State appealed directly to this court pursuant to Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013). We allowed the Illinois Coalition Against Sexual Assault to file a brief *amicus curiae* pursuant to Illinois Supreme Court Rule 345 (eff. Sept. 20, 2010).

¶ 5   ANALYSIS

¶ 6   All statutes are presumed to be constitutionally valid. *People v. Hollins*, 2012 IL 112754, ¶ 13. It is the court's duty to construe a statute in a manner that upholds the statute's constitutionality, if such a construction is reasonably possible. *Id.* The constitutionality of a statute is a question of law that we review *de novo*. *Id.* This court has previously advised circuit courts that " 'cases should be decided on nonconstitutional grounds whenever possible,' " reaching constitutional grounds only if necessary to decide the case. *Vasquez Gonzalez v. Union Health Service, Inc.*, 2018 IL 123025, ¶ 19 (quoting *In re E.H.*, 224 Ill. 2d 172, 178 (2006)).

¶ 7   The due process clause protects fundamental justice and fairness. *People v. Lindsey*, 199 Ill. 2d 460, 472 (2002). Procedural due process claims challenge the constitutionality of procedures used to deprive a person of their life, liberty, or property. *People v. Cardona*, 2013 IL 114076, ¶ 15. The fundamental requirements of due process are notice of the procedure and the opportunity to present any objection or rebuttal. *Id.*

¶ 8   What due process consists of, however, is a flexible concept, as "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Therefore, what procedures due process requires depends upon " 'the precise nature of the government function involved as well as of the private interest that has been affected by governmental action' " in each particular situation. *Id.* (quoting *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 (1961)).

¶ 9   At issue here is the constitutionality of section 112A-11.5 of the Code, which allows for a protective order to be issued in conjunction with a criminal prosecution and provides:

"(a) Except as provided in subsection (a-5) of this Section, the court shall grant the petition and enter a protective order if the court finds prima facie evidence that a crime involving domestic violence, a sexual offense, or a crime involving stalking has been committed. The following shall be considered prima facie evidence of the crime:

(1) an information, complaint, indictment, or delinquency petition, charging a crime of domestic violence, a sexual offense, or stalking or charging an attempt to commit a crime of domestic violence, a sexual offense, or stalking;

(2) an adjudication of delinquency, a finding of guilt based upon a plea, or a finding of guilt after a trial for a crime of domestic battery, a sexual crime, or stalking or an attempt to commit a crime of domestic violence, a sexual offense, or stalking;

(3) any dispositional order issued under Section 5-710 of the Juvenile Court Act of 1987, the imposition of supervision, conditional discharge, probation, periodic imprisonment, parole, aftercare release, or mandatory supervised release for a crime of domestic violence, a sexual offense, or stalking or an attempt to commit a crime of domestic violence, a sexual offense, or stalking, or imprisonment in conjunction with a bond forfeiture warrant; or

(4) the entry of a protective order in a separate civil case brought by the petitioner against the respondent.

(a-5) The respondent may rebut *prima facie* evidence of the crime under paragraph (1) of subsection (a) of this Section by presenting evidence of a meritorious defense. The respondent shall file a written notice alleging a meritorious defense which shall be verified and supported by affidavit. The verified notice and affidavit shall set forth the evidence that will be presented at a hearing. If the court finds that the evidence presented at the hearing establishes a meritorious defense by a preponderance of the evidence, the court may decide not to issue a protective order.

(b) The petitioner shall not be denied a protective order because the petitioner or the respondent is a minor.

(c) The court, when determining whether or not to issue a protective order, may not require physical injury on the person of the victim.

(d) If the court issues a final protective order under this Section, the court shall afford the petitioner and respondent an opportunity to be heard on the remedies requested in the petition." 725 ILCS 5/112A-11.5 (West 2018).

¶ 10    As stated, statutory enactments are presumed constitutional. To overcome that presumption, the party challenging the statute must clearly establish a constitutional violation. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 200 (2009).

¶ 11    Under article 112A, the circuit court must grant a protective order if the court finds *prima facie* evidence that the defendant committed "a crime involving domestic violence, a sexual offense, or a crime involving stalking." 725 ILCS 5/112A-11.5(a) (West 2018). For the statute's purposes, *prima facie* evidence includes the indictment charging defendant with a qualifying crime. *Id.* § 112A-11.5(a)(1).

¶ 12    The State's Attorney, or alternatively the victim, may petition for a protective order at any time following the filing of the charge and issue of summons. *Id.* § 112A-5.5(a), (c). The defendant must receive at least 10 days' notice prior to the court's consideration of the petition. *Id.* § 112A-5.5(f).

¶ 13                    *Medina v. California* Due Process Analysis

¶ 14    The Supreme Court of the United States has stated that, in criminal proceedings, " 'it is normally "within the power of the State to regulate procedures under which its laws are carried out," ' " generally declining to find a due process violation unless the procedure in question " ' "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." ' " *Medina v. California*, 505 U.S. 437, 445 (1992) (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977), quoting *Speiser v. Randall*, 357 U.S. 513, 523 (1958)).

¶ 15    We first evaluate whether allowing the State to make a *prima facie* case for the issuance on a protective order via indictment, without requiring the complaining witness be subject to cross-examination, is a denial of due process. In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the United States Supreme Court considered the

constitutionality of Florida procedures allowing a person arrested without a warrant and charged by information to be jailed or subjected to other restraints pending trial.

¶ 16    As *Gerstein* notes, the probable cause standard for arrest "represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime." *Id.* at 112. The *Gerstein* Court found that the fourth amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. *Id.* at 114. Standing alone, a prosecutor's assessment of probable cause does not meet due process requirements and is thus insufficient to justify pretrial restraint of liberty. *Id.* at 117. However, a determination of probable cause by a neutral and disinterested party could satisfy constitutional protections. *Id.* at 114.

¶ 17    In determinations of probable cause, the Supreme Court held that the "adversary safeguards," including "confrontation [and] cross-examination [of witnesses]," were "not essential for the probable cause determination required by the Fourth Amendment" "for detaining the arrested person pending further proceedings." *Id.* at 119-20.

¶ 18    In *Gerstein*, the Supreme Court considered pretrial detainment furnished through a charge by information. The Court found such confinement constitutionally permissible where probable cause was properly established. In the present case, defendant was charged by indictment, with a grand jury finding probable cause prior to the petition for a protective order and attendant restraints on liberty. "[A]n indictment 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause" to believe the defendant perpetrated the offense alleged. *Id.* at 117 n.19 (quoting *Ex Parte United States*, 287 U.S. 241, 250 (1932)).

¶ 19    Indeed, the United States Supreme Court has repeatedly held that a grand jury indictment "may do more than commence a criminal proceeding (with all the economic, reputational, and personal harm that entails); the determination may also serve the purpose of immediately depriving the accused of her freedom." *Kaley v. United States*, 571 U.S. 320, 329 (2014); see also *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997).

¶ 20 A protective order, at issue in the present case, is unquestionably a less restrictive constraint on liberty than the pretrial imprisonment contemplated in *Gerstein*. As an indictment is constitutionally sufficient to sustain detainment, a more extreme restriction on liberty, we likewise find it constitutionally sufficient to be the basis of a protective order pursuant to section 112A-11.5.

¶ 21 There is no historic basis for concluding that due process precludes the use of an indictment, alone, for restricting a defendant's liberties prior to trial. In fact, the indictment has always been sufficient to constrict liberties. The United States Supreme Court, relying on the grand jury's "historical role of protecting individuals from unjust persecution," has traditionally "let [that body's] judgment substitute for that of a neutral and detached magistrate." *Gerstein*, 420 U.S. at 117 n.19. Therefore, article 112A's issuance of a protective order when an indictment establishes a *prima facie* case offends no traditional or fundamental principle of justice.

¶ 22 Under the *Medina* standard, we thus find the issuance of a protective order issued through the procedures detailed in section 112A-11.5 and based upon the return of an indictment, even without giving defendant the opportunity to confront and cross-examine the victim, constitutionally permissible and in accord with due process.

¶ 23 *Mathews v. Eldridge* Due Process Analysis

¶ 24 In addition to the *Medina* standard, the United States Supreme Court has established a separate test to analyze potential due process violations in deprivations of property. In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court considered whether the due process clause of the fifth amendment requires that a recipient of Social Security disability payments be afforded an opportunity for an evidentiary hearing prior to the termination of benefits. In finding that an evidentiary proceeding was not required, the Court utilized a three-factor balancing test to conclude that the administrative procedures at issue fully comported with due process. *Id.*

¶ 25 While initially devised in *Mathews*'s administrative setting, the Supreme Court has also applied the test to evaluate due process challenges in a criminal proceeding,

albeit still in consideration of the deprivation of a property, as opposed to liberty, interest. In *Kaley*, 571 U.S. 320, the defendants were charged by grand jury indictment with a scheme to steal prescription medical devices and sell them for profit. The defendants sought to apply the *Mathews* factors to their claim that, when challenging the legality of the government's pretrial asset seizure, they were constitutionally entitled to contest a grand jury's determination of probable cause. Although admonishing that *Medina*, and not *Mathews*, provides the appropriate framework for assessing the validity of state procedural rules that apply to the criminal process, the *Kaley* Court nonetheless additionally applied the *Mathews* analysis to the claim and found that due process was not violated under either standard. *Id.* at 334, 340.

¶ 26        Indeed, both the United States Supreme Court and this court have at times previously either applied or considered applying the *Mathews* guidance in evaluation of criminal justice procedures as well. See *United States v. Raddatz*, 447 U.S. 667 (1980); *Ake v. Oklahoma*, 470 U.S. 68 (1985); *Cardona*, 2013 IL 114076.

¶ 27        Per *Mathews*, when evaluating a procedural due process challenge, we should consider (1) the government's interest in the procedure, including the function involved and the fiscal or administrative burdens that the additional or substitute procedure would entail, (2) the private interest affected by the governmental action, and finally (3) the risk of an erroneous deprivation of said interest through the procedures being contested and the probable value, if any, of additional or substitute procedural safeguards. *Mathews*, 424 U.S. at 335.

¶ 28                                    *Mathews* Factors

¶ 29        To begin the *Mathews* analysis, the government has a substantial interest in protecting victims of sexual assault and related crimes from continued contact by the accused pending trial. The issuance of a no-contact order may prevent the victim from being subject to continued stalking, harassment, or intimidation. The government also has a significant interest in minimizing the number of times the alleged victim is subject to adversarial proceedings prior to trial. Victims of sexual assault may already be physically and psychologically traumatized by the alleged crimes. As the statute states, "[t]he purpose of this Article is to protect the safety of victims *** and to minimize the trauma and inconvenience associated with

attending separate and multiple civil court proceedings to obtain protective orders." 725 ILCS 5/112A-1.5 (West 2018).

¶ 30    Requiring the victim to be subject to multiple pretrial "mini-trials" could discourage continued cooperation from particularly reticent victims, undermining the government's ability to pursue justice for those wronged. At the very least, such an adversarial proceeding could consume significant prosecutorial time and resources.

¶ 31    On the other hand, the defendant also has a fundamental interest at stake: the liberty to move about without restriction pending trial. One mitigating factor is the limited number of locations the defendant is precluded from visiting under the no-contact order. Pursuant to the no-contact order sought under section 112A-11.5, defendant is prohibited only from contacting the victim, from "harassing or stalking" her, and from entering her place of employment. Outside of these limited mandates, defendant's liberties remained unaffected throughout trial. While defendant has a fundamental liberty interest in freedom of movement, when viewed in the scope of his restrictions, he does not have a significant interest in associating with his alleged victim.

¶ 32    Another important factor in assessing the impact of official action on private interests is the " 'possible length of wrongful deprivation of . . . benefits.' " *Mathews*, 424 U.S. at 341 (quoting *Fusari v. Steinberg*, 419 U.S. 379, 389 (1975)). Here, defendant is deprived of purely unrestricted movement only "until disposition, withdrawal, or dismissal of the underlying charge." 725 ILCS 5/112A-20(b)(1) (West 2018). While the length of time from indictment to trial can vary greatly, defendant retains a large degree of autonomy in determining this time through his right to demand a speedy trial. Further, said deprivation of that interest is wrongful only when unsupported by a finding of probable cause.

¶ 33    Ultimately, the conditions of the no-contact order were relatively limited and largely identical to the restraints imposed as conditions of defendant's pretrial bond release. Hence, not only would defendant be subject to these conditions absent section 112A-11.5, but the conditions are undeniably less restrictive than the pretrial confinement an indictment and accompanying arrest warrant can also constitutionally enable as stated above.

¶ 34    The remaining prong of the *Mathews* test—the probable value, if any, of a judicial hearing allowing defendant to confront and cross-examine the complaining witness—is critical "when the governmental and private interests both have weight." *Kaley*, 571 U.S. at 338. Although we conclude that the governmental interests here have vastly more weight than the implicated interests of defendant, we will nevertheless assess this factor as well. While "confrontation and cross-examination might *** enhance the reliability of probable cause determinations in some cases," in most instances "their value would be too slight to justify holding, as a matter of constitutional principle, that these formalities and safeguards designed for trial must also be employed" at less critical stages in the prosecution like the granting of a no-contact order. *Gerstein*, 420 U.S. at 121-22. While the criminal justice system relies on such adversarial safeguards when the question is whether a defendant is guilty beyond a reasonable doubt, an adversarial process as suggested by defendant at this stage is far less useful.

¶ 35    Application of the *Mathews* test to the present case only confirms what we have already concluded through *Medina*. Under either *Medina* or *Mathews*, we again find the statute's potential issuance of a protective order, absent an opportunity for the defendant to confront the complaining witness, is in compliance with due process requirements.

¶ 36                    Defendant's Opportunity to Rebut the *Prima Facie* Case

¶ 37    We next decide whether the statute's requirement that a defendant present a meritorious defense to rebut the indictment and prevent the protective order violates a defendant's right against self-incrimination. Under article I, section 10, of our state constitution, which is substantially similar to the fifth amendment to the United States Constitution, "[n]o person shall be compelled in a criminal case to give evidence against himself." Ill. Const. 1970, art. I, § 10.

¶ 38    The privilege against self-incrimination applies in any proceeding, civil or criminal, where there is a reasonable expectation that a person would subject himself to criminal contempt proceedings by making any compelled statements. *Lindsey*, 199 Ill. 2d at 467.

¶ 39        To be clear, at no point in the proceedings outlined by section 112A-11.5 is a defendant *required* to present any evidence of a meritorious defense. Instead, after the indictment establishes the *prima facie* showing for issuance of a no-contact order, the defendant may permissively rebut that showing if he so chooses. There is no legal compulsion for defendant to rebut the *prima facie* evidence, thereby alleviating self-incrimination concerns.

¶ 40        In *Lindsey*, this court held that a probationer could be compelled to testify at a probation revocation hearing, finding that the defendant's fifth amendment right against self-incrimination was not violated because his testimony impacted only his probationary status and did not realistically expose him to further proceedings. *Id.* at 468. The instant case is distinguishable from *Lindsey* in that defendant does face further criminal proceedings following any proffered testimony to rebut the *prima facie* evidence. Thus, unlike *Lindsey*, defendant cannot be compelled to testify.

¶ 41        There may be concerns that the defendant does not actually have a free choice whether to present a meritorious defense or to remain silent, as the issuance of the protective order is at stake. If a defendant testifies, he risks his testimony being used in the underlying charge of sexual assault. If he remains silent, he risks the issuance of the order. The United States Supreme Court has previously addressed extraneous forces creating "indirect compulsion" to abandon one's protections against self-incrimination.

¶ 42        In *Simmons v. United States*, 390 U.S. 377 (1968), the witness was forced to choose between the exercise of one constitutional right at the expense of another. The defendant testified in a hearing on his motion to suppress, and that testimony was used against him at trial. The Supreme Court held that such practice was unconstitutional. The defendant "was obliged either to give up what he believed *** to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination." *Id.* at 394. To be clear, the present case does not involve compelled testimony. As we have discussed, the issuance of a protective order on the basis of an indictment pursuant to section 112A-11.5 does not violate fourteenth amendment due process. Further, the potential risk of temporarily being unable to contact the victim, harass or stalk the victim, or enter her place of employment, as proscribed by the no-contact order,

does not rise to the level of "an undeniable tension" between the exercise of two fundamental rights that *Simmons* recognized, should defendant choose to remain silent. *Id.* Therefore, we find that the statute does not implicate compelled testimony, directly or indirectly. For this reason, the outlined procedures in question do not violate the right against self-incrimination.

¶ 43                                                   Burden Shifting

¶ 44        The circuit court's final rationale for invalidating section 112A-11.5 was that it shifted the burden to defendant, in conflict with the Illinois Civil No Contact Order Act's requirement that the petitioner establish the allegations necessary to issue a protective order (740 ILCS 22/204, 215.5 (West 2018)).

¶ 45        "Where two statutes are allegedly in conflict, a court has a duty to interpret the statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible." *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 441-42 (2005). "In other words, before declaring two statutes to be in conflict, '[w]e must presume that several statutes relating to the same subject *** are governed by one spirit and a single policy, and that the legislature intended the several statutes to be consistent and harmonious." *In re Jarquan B.*, 2017 IL 121483, ¶ 34 (quoting *Uldrych v. VHS of Illinois, Inc.*, 239 Ill. 2d 532, 540 (2011)).

¶ 46        Under the Civil No Contact Order Act, it is generally the petitioner's burden to establish qualifying acts by the respondent that justify the issuance of an order of protection through testimony or affidavit. Meanwhile, as discussed, section 112A-11.5(a) allows an indictment supported by probable cause to serve as the *prima facie* evidence for a protective order.

¶ 47        The Illinois General Assembly has enacted several statutes allowing for protective orders to be issued on behalf of victims of domestic violence and sexual assault. See, *e.g.*, Stalking No Contact Order Act (740 ILCS 21/1 *et seq.* (West 2018)); Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 2018)); Civil No Contact Order Act (740 ILCS 22/101 *et seq.* (West 2018)); 725 ILCS 5/112A-11.5 (West 2018).

¶ 48    Although the statutes may at times govern overlapping areas of coverage, or even present differing parties shouldering the burden of persuasion, the overarching legislative intent is clear. Through the enactment of a myriad of statutes, the General Assembly has sought to provide comprehensive protection to those affected by domestic violence, stalking, and sexual assault.

¶ 49    For example, the Illinois Domestic Violence Act of 1986 allows for the issuance of a civil order of protection for persons in a dangerous dating or familial relationship (see 750 ILCS 60/201(a) (West 2018)), while the Civil No Contact Order Act provides that protective orders are also available for victims of sexual assault yet does not require a dating relationship between the petitioner and respondent (see 740 ILCS 22/213 (West 2018)). The Civil No Contact Order Act allows for a protective order based on a single unwarranted assault (see *id.* § 201(b)(1)), whereas the Stalking No Contact Order Act requires petitioner to establish that respondent engaged in a course of conduct (see 740 ILCS 21/5 (West 2018)).

¶ 50    Here, section 112A-11.5 and the Illinois Civil No Contact Order Act are not in unresolvable conflict, as article 112A applies only to proceedings in connection with criminal prosecutions, while the Illinois Civil No Contact Order Act governs civil proceedings in which the respondent has not been charged with a crime. The legislative intent is made clear within the statute. "Rape is recognized as the most underreported crime; estimates suggest that only one in seven rapes is reported to authorities. Victims who do not report the crime still desire safety and protection from future interactions with the offender. Some cases in which the rape is reported are not prosecuted." 740 ILCS 22/102 (West 2018). Clearly, the Civil No Contact Order Act was enacted in contemplation of protection for victims who may have failed to or been fearful of reporting the crime in a timely manner, or where the State declines prosecution.

¶ 51    Conversely, article 112A places the authority with either the victim or the prosecutor to petition for a no-contact order, specifically attendant to a criminal prosecution. Probable cause has already been determined through indictment in these proceedings; thus different burdens and procedures may appropriately be required for the issuance of the protective order.

¶ 52      As these two statutes operate in different proceedings, criminal and civil, we decline to minimize the protections sought by the General Assembly for the vastly varying scenarios confronted by victims of sexual assault. We give effect to both statutes, as consistent with the legislative intent of providing wide coverage for those seeking protective orders.

¶ 53                                    CONCLUSION

¶ 54      For the foregoing reasons, we conclude that section 112A-11.5 does not violate due process by allowing the State to make a *prima facie* case for issuance of a protective order by producing an indictment without requiring the complaining witness be subject to confrontation and cross-examination. Neither does the statute compel testimony or the presentation of evidence by the defendant in violation of constitutional protections against self-incrimination. Finally, we do not find impermissible burden shifting nor a conflict that renders the operation of either section 112A-11.5 or the Civil No Contact Order Act untenable.

¶ 55      Accordingly, the judgment of the circuit court is reversed.

¶ 56      Reversed and remanded.