NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230422-U

NO. 4-23-0422

IN THE APPELLATE COURT

FILED
July 9, 2024
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Carroll County. |
| JACOB KEENAN, | ) | No. 22CF42 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jerry Kane, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court
Presiding Justice Cavanagh and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Defendant's trial counsel was not ineffective for failing to move for a directed finding of not guilty at the close of the State's case-in-chief where there was sufficient evidence on the count in question; (2) defendant failed to show a substantial likelihood that his sentence was affected by his counsel's allegedly deficient failure to argue a mitigating factor; and (3) the trial court acted without subject-matter jurisdiction by *sua sponte* entering a civil no contact order in the absence of any request by the named victim or the State on her behalf.

¶ 2    Defendant Jacob Keenan was convicted of several offenses related to his sexual assault of his female friend O.M., including one count of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2022)). The trial court sentenced defendant to 29 years' imprisonment, followed by three years of mandatory supervised release. The court also entered a civil no contact order prohibiting him from contacting O.M. until two years after he completes his term of mandatory supervised release.

¶ 3        On appeal, defendant argues that his counsel was constitutionally ineffective for failing to (1) move for a directed finding of not guilty on the domestic battery count at the close of the State's evidence, (2) argue in favor of a lesser term of imprisonment on the basis that defendant is the parent of a child whose well-being would be negatively affected by his absence, and (3) object to the trial court's entry and extension of the civil no contact order on the basis that the court failed to afford him due process of law. We find no error on the first and second points, but we find that the court's entry of the civil no contact order was erroneous, albeit on jurisdictional rather than constitutional grounds. Accordingly, we affirm defendant's conviction and sentence but vacate the civil no contact order and the extension of that order.

¶ 4                            I. BACKGROUND

¶ 5        Defendant sexually assaulted O.M. on four consecutive dates in May 2022; O.M.'s mother reported defendant to the police on June 6, 2022. The police interviewed defendant the following day; he informed them that after O.M. turned 18 in October 2021, they started dating and "having relations." Defendant was charged by information with four counts of aggravated criminal sexual assault (*id.* § 11-1.30(a)(2)) and one count of aggravated unlawful restraint (*id.* § 10-3.1(a)) for preventing O.M. from leaving a vehicle by threatening her with a knife. Defendant was also charged with one count of domestic battery (*id.* § 12-3.2(a)(1)) for striking O.M. in the face. As a necessary element of the domestic battery charge, the State alleged that O.M. was "a[ ] family or household member" (*id.*), which is defined by statute as including "persons who have or have had a dating *** relationship" with the defendant but excluding "a casual acquaintanceship [ ]or ordinary fraternization between 2 individuals in business or social contexts" (*id.* § 12-0.1).

¶ 6        The trial court conducted a bond hearing on June 8, 2022, and addressed defendant's bond and conditions of pretrial release as follows:

"THE COURT: All right. Now, [defendant], Judge Kane was presented with testimony, found probable cause and set bail in the amount of $200,000.00. That's a ten percent bond; that means you would need 20,000 to post. These are Category A offenses, so you don't receive $30.00 per day credit. And the only other condition of bond is that you're not to have contact with [O.M.] while this case is pending.

Do you understand that, [defendant]?

THE DEFENDANT: I understand. I would like that, too, Your Honor. I would not want any contact between her or her mother because it seems like they're both playing against me now."

The court entered an order memorializing defendant's bond and the no contact condition that same day. Defendant failed to post the $20,000 bond deposit and remained in custody throughout the proceedings below.

¶ 7       On June 17, 2022, the trial court *sua sponte* entered a plenary civil no contact order pursuant to article 112A of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 112A (West 2022)), effective until a final judgment was entered in the criminal case; the order was served on defendant the same day. No petition for a civil no contact order appears in the record on appeal, and there is nothing to indicate that O.M. or anyone acting on her behalf, including the state's attorney, had requested a civil no contact order, either orally or in writing. We also note that O.M. was not made a party to the case, and the order appears in the impounded record rather than the public record, so it is unclear whether O.M. ever had access to the order herself. See Ill. S. Ct. R. 8(b)(2) (eff. Jan. 1, 2022) (" 'Impounded' means a document or case that is accessible

only to the parties of record on a case; otherwise, the document or case is only accessible upon order of court."); see also Ill. Const. 1970, art. I, § 8.1(b) ("The victim does not have party status.").

¶ 8		The matter proceeded to a bench trial in November 2022. We need not provide an exhaustive summary of the trial evidence because only a small portion is relevant to this appeal.

¶ 9		As part of its case-in-chief, the State introduced an audio recording of the police interview with defendant in which he said that he and O.M. had dated. O.M. took the stand and testified that she and defendant had never been in a dating relationship. When asked about their relationship in early 2022, she testified that he was a friend she saw at least twice a week and, after three to four months, every day. According to O.M., she and defendant would hang out, play music, play video games, and drive around. When asked about the incidents in May 2022, she testified that the sex was not consensual. Defense counsel did not move for a directed finding of not guilty at the close of the State's evidence.

¶ 10		As part of his case-in-chief, defendant called his aunt as a witness on his behalf; she testified on direct examination that O.M. was defendant's girlfriend and the two spent a lot of time together. When asked on cross-examination whether O.M. and defendant "were in some type of romantic relationship," defendant's aunt answered, "Oh, my gosh, yes." Defendant chose to take the stand in his defense; he testified that he had been seeing O.M. romantically before the May 2022 incidents, that the sex was consensual and that he never forced himself on her. Defense counsel did not move for a directed finding of not guilty at the close of all of the evidence.

¶ 11		On December 2, 2022, the trial court found defendant guilty of aggravated criminal restraint, domestic battery, and one count of aggravated criminal sexual assault. For each of the remaining three counts of aggravated criminal sexual assault, the court found defendant guilty of the lesser-included offense of criminal sexual assault (720 ILCS 5/11-1.20 (West 2022)).

- 4 -

¶ 12    Before sentencing, the trial court received a letter from M.B., defendant's ex-girlfriend and the mother of defendant's 15-year-old son L.K. According to M.B., defendant "ha[d] been a great partner and co-parent for his son [L.K.]," and she "need[ed defendant's] help co-parenting just as much as [L.K. was] going to need his father over these crutial [*sic*] developmental years going into young adulthood." M.B. further explained that L.K. "need[ed defendant] for his guidance and support emotionally and financially" and that if defendant went to prison, he could not pay the child support that L.K. depended on.

¶ 13    At the sentencing hearing, the assistant state's attorney sought an extension of the civil no contact order as follows:

"[MR. KANEY (ASSISTANT STATE'S ATTORNEY)]: I would also be asking the Court to make a finding in the civil no contact order that was initially granted in this case until a disposition of this case. And I would be asking that it be extended to two years following any order of imprisonment or [mandatory supervised release]. Because of the mandatory supervised release being a range, I would ask the Court to make that until further order of the Court, just so that—

THE COURT: Is there a provision in there that it can be done until vacated?

MR. KANEY: I believe so under certain circumstances if approved by the judge. And I can try to find that statutory language.

THE COURT: All right."

¶ 14    When explaining its determination of defendant's sentence, the trial court addressed M.B.'s letter as follows:

"[THE COURT: Considering whether t]he imprisonment of the defendant would entail excessive hardship to his dependents. There's no evidence before me

on that, although some of the letters did speak to that. Especially his child, [L.K.], from *** the mother.

And I am considering, although the weight you put on these mitigation—well, any of the factors just depends on the evidence presented. And if you look under the mitigation statute, paragraph 18 [(730 ILCS 5/5-5-3.1(a)(18) (West 2022))], the defendant is the parent of a child whose well-being will be negatively affected by the parent's absence. And then there's several things here to consider. Really no evidence that was presented on those things that are to be considered. Clearly, the father being sent to prison I assume would affect the child. But, you know, it's hard to tell. There wasn't really any evidence presented."

The court declined to assign any weight to this or any other mitigating factor and assigned weight to the aggravating factors that defendant had a history of criminal activity, that the sentence was necessary for deterrence, and that defendant was on conditional discharge when the offenses were committed. See 730 ILCS 5/5-5-3.2(a)(3), (7), (12) (West 2022). The court sentenced defendant to a total of 29 years in the Illinois Department of Corrections, followed by three years of mandatory supervised release.

¶ 15　　　　The trial court entered its judgment of conviction and sentence on January 25, 2023. On February 6, 2023, the court entered an order extending the plenary civil no contact order until two years after the completion of defendant's mandatory supervised release. Defendant moved for reconsideration of his sentence on February 23, 2023, but he did not mention L.K. or the civil no contact order in the motion. The court held a hearing and denied the motion on May 10, 2023.

¶ 16　　　　This appeal followed.

¶ 17　　　　　　　　　　　　　　　II. ANALYSIS

¶ 18        Defendant argues that his counsel was constitutionally ineffective for failing to (1) move for a directed finding of not guilty on the domestic battery count at the close of the State's evidence, (2) argue in favor of a lesser term of imprisonment on the basis that defendant is the parent of a child whose well-being would be negatively affected by his absence, and (3) object to the trial court's entry and extension of the civil no contact order on the basis that the court failed to afford him due process of law. We address each argument in turn.

¶ 19                        A. Motion for a Directed Finding

¶ 20        Defendant first argues that the State, in its case-in-chief, failed to produce sufficient evidence to show that he and the victim had a dating relationship, a necessary element of his conviction for domestic battery that explicitly does not include casual acquaintanceships. See 720 ILCS 5/12-0.1, 12-3.2(a)(1) (West 2022). Under subsection (k) of section 115-4 of the Code (725 ILCS 5/115-4(k) (West 2022)), defendant had the right to challenge the sufficiency of the State's evidence by moving for a directed finding of not guilty at the close of the State's evidence; the trial court would have been compelled to grant the motion unless "a reasonable mind could fairly conclude the guilt of [defendant] beyond [a] reasonable doubt, considering the evidence most strongly in the [State's] favor." *People v. Withers*, 87 Ill. 2d 224, 230 (1981); see *People v. Connolly*, 322 Ill. App. 3d 905, 917 (2001) (noting that the same standard applies in bench trials as in jury trials). Defendant's counsel did not make the motion.

¶ 21        According to defendant, if his counsel had moved for a directed finding at the close of the State's evidence, the trial court would have granted the motion and acquitted him of domestic battery, therefore this court should (1) find his counsel constitutionally ineffective for failing to make the motion, (2) reduce his conviction for domestic battery to the lesser-included

offense of simple battery, and (3) reduce his sentence accordingly. See Ill. S. Ct. R. 615(b)(3)-(4) (eff. Jan. 1, 1967) (authorizing this court to grant such relief).

¶ 22 We note that defendant is concerned only with the State's case-in-chief and not the entirety of the evidence introduced at trial; as the State points out, defendant himself called a third-party witness who testified that he and the victim were in a romantic relationship. Defendant's introduction of this testimony is significant because it likely foreclosed an ordinary challenge to the sufficiency of the evidence supporting his conviction, which this court may address without first considering whether defense counsel was ineffective for failing to raise the issue with the trial court. See *People v. Woods*, 214 Ill. 2d 455, 470 (2005) ("[W]hen a defendant makes a challenge to the sufficiency of the evidence, his or her claim is not subject to the [forfeiture] rule and may be raised for the first time on direct appeal."). In contrast, defendant's circuitous challenge to the State's case-in-chief requires further analysis.

¶ 23 1. *Ineffective Assistance of Counsel*

¶ 24 Under the sixth amendment to the United States Constitution (U.S. Const., amend. VI), criminal defendants have the right to the assistance of counsel for their defense, and " 'the right to counsel is the right to the effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). The standard for considering claims of ineffective assistance of counsel is well established:

> "Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Generally, to sustain a claim of ineffective assistance, a defendant must show that his counsel's performance was deficient and that such deficiency prejudiced the defense. [Citation.] An attorney's performance is deficient where he or she made errors that

- 8 -

were so serious that he or she was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. [Citation.] A defendant establishes prejudice where counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. [Citation.] In that respect, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. [Citation.] A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *People v. Johnson*, 2023 IL App (4th) 220201, ¶ 40.

¶ 25    We will consider claims of ineffective assistance of counsel for the first time on direct appeal when the factual record is adequate to allow for consideration of the claim. *People v. Veach*, 2017 IL 120649, ¶ 46. Here, our inquiry under *Strickland*'s prejudice prong requires only a review of record evidence in the light most favorable to the State (see *Connolly*, 322 Ill. App. 3d at 918), so we choose to resolve this appeal on the basis of prejudice. See *Strickland*, 466 U.S. at 697 (holding that a court need not address deficiency "if the defendant makes an insufficient showing on" prejudice). Our standard of review is *de novo*. *Johnson*, 2023 IL App (4th) 220201, ¶ 40.

¶ 26    As an initial matter, we note some misgivings about defendant's argument, which effectively asks us not to reverse what the trial court *did*—find him guilty based on all the evidence introduced at a trial where defense counsel never moved for a directed finding of not guilty—but what it *never had the opportunity to do*: deny a motion for a directed finding of not guilty at the close of the State's evidence. To be sure, counsel may be constitutionally ineffective for failing to make a motion that would have been granted, and outright reversal of a conviction may even be

the appropriate remedy. See, *e.g.*, *People v. Redmon*, 2022 IL App (3d) 190167, ¶ 23 (reversing a conviction outright when counsel was constitutionally ineffective for failing to file a pretrial motion to dismiss the prosecution on speedy trial grounds).

¶ 27　　　　However, a claim of ineffective assistance of counsel circumvents the customary appellate process, and we must always be cautious about allowing a defendant to obtain a reversal through inaction. See *People v. Denson*, 2014 IL 116231, ¶ 13 ("This court's forfeiture rules exist to encourage defendants to raise issues in the trial court, thereby ensuring *** that the defendant does not obtain a reversal through his or her own inaction."). The reason *Strickland* provides for the reversal of a conviction based on an unpreserved issue is that counsel's unprofessional errors— including any attendant failure to preserve the issue for appeal—may have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Given *Strickland*'s focus on the reliability of *convictions*, we question whether a reviewing court on direct appeal from a conviction should ever disregard the trier of fact's finding of guilt when determining whether the defendant was prejudiced. See *id.* at 695 ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, *the factfinder would have had a reasonable doubt respecting guilt*." (Emphasis added.)). Nevertheless, that is exactly what defendant is asking us to do here.

¶ 28　　　　To consider defendant's argument directly, rather than indirectly by way of *Strickland*, we would have required him to preserve the issue by (1) moving for a directed finding at the close of the State's evidence, (2) obtaining a ruling denying the motion, and (3) renewing the motion after presenting his own evidence. *People v. Barrow*, 133 Ill. 2d 226, 249 (1989). Even then, it is unclear whether we would have limited our consideration to the State's evidence alone, as defendant asks. See *People v. Kelley*, 338 Ill. App. 3d 273, 280 (2003) ("[W]e find it unclear

whether a reviewing court should consider all of the evidence presented at trial, including the evidence presented during the defendant's case, when reviewing the denial of a motion for a directed verdict or directed finding at the close of the State's case."). However, the significant weight of authority suggests that reviewing courts should not take such an approach. See *State v. Perkins*, 271 Conn. 218, 237 n.23 (2004) (collecting cases); *cf. United States v. Foster*, 783 F.2d 1082, 1084-85 (D.C. Cir. 1986) (opinion by Scalia, J., for a unanimous *en banc* court) ("The policy judgment *** is that a defendant demonstrated to be guilty beyond a reasonable doubt on the basis of all the valid and admissible evidence will not be set free merely because, had an earlier erroneous ruling been made correctly, the trial would have ended before sufficient evidence to convict had been introduced."); but see *People v. Rascher*, 223 Ill. App. 3d 847, 855 (1992) (suggesting that reversal might be appropriate if the defendant's choice to present evidence resulted from a "guessing game" created by the trial court's erroneous *refusal to rule* on a motion for a directed verdict at the close of the State's evidence).

¶ 29        If it is true that we would have not have disregarded defendant's evidence when addressing a preserved argument, then we are extremely reluctant to disregard defendant's evidence when the same argument has been forfeited, because that might provide trial counsel in future cases with an incentive, however slight, to *deliberately* fail to preserve this issue on the basis that the same argument might be successful if raised for the first time in this court via *Strickland*. *Cf. People v. Averett*, 237 Ill. 2d 1, 18 (2010) (explaining that normal forfeiture principles cannot bypass a defendant's failure to testify and "open the possibility of an erroneous decision subject to appellate review").

¶ 30        Ultimately, the State appears not to share our misgivings about applying *Strickland* in this manner, and by failing to raise any such threshold arguments in its brief, the State has

forfeited them. See *People v. Lucas*, 231 Ill. 2d 169, 175 (2008) (explaining that the State forfeits issues it fails to raise with this court). Nevertheless, our conclusion that defendant's argument fails on its own terms should not be interpreted as opining on any arguments that the parties have not raised in this appeal. See *Save the Prairie Society v. Greene Development Group, Inc.*, 338 Ill. App. 3d 800, 803 (2003) ("When a court expressly reserves an issue, its decision cannot be considered a resolution of the reserved issue."); see also *Kelley*, 338 Ill. App. 3d at 280 (noting that this court may affirm the trial court's denial of a directed verdict on any basis supported by the record).

¶ 31                    2. *The Corpus Delicti Rule*

¶ 32            According to defendant, our inquiry into prejudice requires us to determine whether there is a reasonable probability that, if his counsel had made a motion for a directed finding of not guilty at the close of the State's evidence, the trial court would have granted the motion and acquitted him of domestic battery. As explained above, we assume without deciding that defendant's proposed approach is correct; having done so, we find that there is no reasonable probability of a different result because the trial court would have correctly denied the motion based on the State's evidence alone. See *People v. Cross*, 2021 IL App (4th) 190114, ¶ 101, *aff'd*, 2022 IL 127907 (finding no prejudice when counsel failed to make a motion because "the trial court's denial of that motion would have been correct").

¶ 33            As part of its case-in-chief, the State introduced an audio interview of defendant in which he stated that when O.M. turned 18, they started dating and "having relations." Although this statement indicates that defendant and O.M. had a dating relationship, defendant argues that this evidence is insufficient because the State cannot prove the *corpus delicti*—the commission of the offense—using defendant's out-of-court statements alone; the State must supply independent

corroborating evidence. *People v. McKown*, 2022 IL 127683, ¶ 45. Under the *corpus delicti* rule, the corroborating evidence need not "be so strong that it alone proves the commission of the charged offense beyond a reasonable doubt." *People v. Lara*, 2012 IL 112370, ¶ 18. Rather, the corroborating evidence is sufficient if it "correspond[s] with the circumstances recited in the confession and tend[s] to connect the defendant with the crime," even if it does not "precisely align with the details of the confession on each element of the charged offense, or indeed to any particular element of the charged offense." *Id.* ¶ 51.

¶ 34       Here, the State introduced corroborating evidence of a dating relationship through O.M.'s testimony regarding her frequent activities with defendant. Defendant argues that this evidence is not of sufficient strength because O.M. expressly denied that she and defendant had a dating or romantic relationship, suggesting that her relationship with defendant was no more than a casual acquaintanceship. However, this court has explained that a dating relationship may exist even in the absence of "complete reciprocity of interest." *People v. Allen*, 2020 IL App (2d) 180473, ¶ 22. Furthermore, the relevant question on a motion for directed verdict at the close of the State's case would not be whether O.M. subjectively believed she and defendant were in a romantic relationship, but whether defendant's statements, O.M.'s testimony, and the remainder of the State's evidence, all viewed in the light most favorable to the State, so overwhelmingly favored defendant such that a reasonable jury could not have concluded that defendant and O.M. were in a dating relationship as that term is defined in the statute. See *People v. Bruemmer*, 2021 IL App (4th) 190877 ¶ 43; see also *McClellan v. Hull*, 2023 IL App (1st) 220465, ¶ 67 (emphasizing the importance of a case-by-case determination of when two individuals are in a dating relationship). Applying this standard, we conclude that O.M.'s testimony regarding her frequent activities with defendant had "some consistency tending to confirm and strengthen"

defendant's claim that they had dated, so it was sufficient to support a finding that he and O.M. had a dating relationship. *McKown*, 2022 IL 127683, ¶ 46; see, *e.g.*, *Allen*, 2020 IL App (2d) 180473, ¶ 23 (finding that similar evidence was sufficient to establish a dating relationship).

¶ 35　　　　　Because counsel could not have shown that "the [State's] evidence [was] insufficient to support a finding *** of guilty," as required for a motion for a directed finding of not guilty to be granted at the close of the State's evidence (725 ILCS 5/115-4(k) (West 2022)), the trial court would have correctly denied the motion. Accordingly, defendant cannot have been prejudiced by counsel's failure to make the motion, so his claim of ineffectiveness fails. *Cross*, 2021 IL App (4th) 190114, ¶ 101.

¶ 36　　　　　　　　　　B. Mitigating Factor at Sentencing

¶ 37　　　　　Defendant argues that his trial counsel was ineffective at sentencing by failing to argue for the application of the statutory mitigating factor that defendant is "the parent of a child *** whose well-being [would] be negatively affected by [his] absence." 730 ILCS 5/5-5-3.1(a)(18) (West 2022). Because the sixth amendment guarantees the assistance of counsel at sentencing as well as at trial, we apply *Strickland* in this context as well; "[t]o establish ineffective assistance of counsel during sentencing, a defendant must show (1) counsel's performance fell below minimal professional standards and (2) a reasonable probability exists [that] the defendant's sentence was affected." *People v. Merriweather*, 2022 IL App (4th) 210498, ¶ 40 (citing *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 88). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). As with defendant's first argument, we find that the record before us is adequate for an inquiry into prejudice; defendant is concerned only with his counsel's failure to make an argument based on the record and the impact that

counsel's alleged error may have had on the trial court's determination of his sentence, which is also in the record. See, *e.g.*, *Merriweather*, 2022 IL App (4th) 210498, ¶ 41.

¶ 38　　　　　The mitigating factor defendant cites was enacted as the Children's Best Interest Act (Pub. Act 101-471, § 5 (eff. Jan. 1, 2020)), as amended by Public Act 102-211 (eff. Jan. 1, 2022). This mitigating factor provides as follows:

　　　　　"(a) The following grounds shall be accorded weight in favor of withholding or minimizing a sentence of imprisonment:

* * *

　　　　　(18) The defendant is pregnant or is the parent of a child or infant whose well-being will be negatively affected by the parent's absence. Circumstances to be considered in assessing this factor in mitigation include:

　　　　　(A) that the parent is breastfeeding the child;

　　　　　(B) the age of the child, with strong consideration given to avoid disruption of the caregiving of an infant, pre-school or school-age child by a parent;

　　　　　(C) the role of the parent in the day-to-day educational and medical needs of the child;

　　　　　(D) the relationship of the parent and the child;

　　　　　(E) any special medical, educational, or psychological needs of the child;

　　　　　(F) the role of the parent in the financial support of the child;

(G) the likelihood that the child will be adjudged a dependent minor under Section 2-4 and declared a ward of the court under Section 2-22 of the Juvenile Court Act of 1987;

(H) the best interest of the child.

Under this Section, the defendant shall have the right to present a Family Impact Statement at sentencing, which the court shall consider in favor of withholding or minimizing a sentence of imprisonment prior to imposing any sentence and may include testimony from family and community members, written statements, video, and documentation. Unless the court finds that the parent poses a significant risk to the community that outweighs the risk of harm from the parent's removal from the family, the court shall impose a sentence in accordance with subsection (b) that allows the parent to continue to care for the child or children." 730 ILCS 5/5-5-3.1(a)(18) (West 2022).

Subsection (b) applies to all mitigating factors listed in subsection (a), including the best interest factor, and provides:

"If the court, having due regard for the character of the offender, the nature and circumstances of the offense and the public interest finds that a sentence of imprisonment is the most appropriate disposition of the offender, or where other provisions of this Code mandate the imprisonment of the offender, the grounds listed in paragraph (a) of this subsection [*sic*] shall be considered as factors in mitigation of the term imposed." *Id.* § 5-5-3.1(b).

¶ 39　　　　The best interest factor is therefore unique among mitigating factors because (1) the defendant has the right to invoke it by presenting a family impact statement and (2) the trial court must make an additional finding "that the [defendant] poses a significant risk to the community that outweighs the risk of harm from the [defendant's] removal from the family" to depart from the statutory preference for "a sentence *** that allows the [defendant] to continue to care for the child or children." *Id.* § 5-5-3.1(a)(18). We note, however, that the statute does not purport to require an *express* finding, so we adhere to the usual principle that "[a] court is not required to expressly outline every factor it considers for sentencing[,] and we presume the court considered all mitigating factors on the record in the absence of explicit evidence to the contrary." *People v. Harris*, 2015 IL App (4th) 140696, ¶ 57 (citing *People v. Meeks*, 81 Ill. 2d 524, 534 (1980)); see *People v. Davis*, 93 Ill. 2d 155, 160-61 (1982) (noting constitutional concerns when a statute "attempts to dictate the actual content of the judge's pronouncement of sentence").

¶ 40　　　　On its face, the trial court's statement at sentencing that there was *no* evidence on the best interest factor is incorrect; in addition to M.B.'s letter, defendant's presentence investigation report addresses several of the necessary considerations. This statement is significant because "[w]hile the trial court cannot *ignore* evidence in mitigation, it may determine the weight to attribute to mitigating evidence." (Emphasis added.) *People v. Powell*, 2013 IL App (1st) 111654, ¶ 35. Here, however, it is clear from context that the court did not ignore the evidence; it was familiar with the contents of M.B.'s letter and the presentence investigation report but simply assigned no weight to M.B.'s statements about L.K., as they pertained to an overall consideration of mitigating factors under subsection (b). See *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009) ("In determining whether the trial court based the sentence on proper aggravating and mitigating

factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court.").

¶ 41 Less clear is whether the trial court made an implicit finding that defendant posed a significant risk to the community that outweighed the risk of harm from his removal from his family. See 730 ILCS 5/5-5-3.1(a)(18) (West 2022). Under the circumstances of this case, however, the court's failure to make such a finding was inconsequential because defendant's removal from his family was inevitable, as were any accompanying harms. At the time of sentencing, L.K. was three years from becoming an adult, and defendant faced a mandatory minimum sentence of six years' imprisonment, so the court had no authority to "impose a sentence in accordance with subsection (b) that allow[ed defendant] to continue to care for [his] child" while L.K. was still a child. *Id.*; see *id.* § 5-5-3.1(b) (providing that mitigating factors cannot supersede "other provisions of this Code [that] mandate the imprisonment of the offender").

¶ 42 Accordingly, we find that defendant has failed to show a substantial likelihood that his counsel's failure to argue in favor of the best interest factor affected the trial court's determination of his sentence under either relevant provision of the sentencing statute. *Id.* § 5-5-3.1(a)(18), (b). Absent such a showing, defendant's claim of ineffectiveness fails. See *Merriweather*, 2022 IL App (4th) 210498, ¶ 40 (quoting *Hibbler*, 2019 IL App (4th) 160897, ¶ 88).

¶ 43                           C. The Civil No Contact Order

¶ 44 Defendant argues that the trial court erred by entering and extending the civil no contact order against him without affording him due process of law. See U.S. Const., amend XIV, § 1; Ill. Const. 1970, art. I, § 2. Although he recognizes that this issue was not raised in the trial court, he argues that the forfeiture should be excused under *Strickland*, based on the tacit assumption that his sixth amendment right to counsel in the criminal prosecution extended to the

civil no contact order proceeding. But *cf. People v. Pendleton*, 223 Ill. 2d 458, 472 (2006) (applying a lower standard for appointed counsel in civil postconviction proceedings as opposed to criminal prosecutions).

¶ 45 Rather than address these constitutional arguments, however, we must begin and end our analysis on the question of subject-matter jurisdiction, an issue the parties have failed to address but which we have an independent obligation to examine. See *Gassman v. RGB Riverboat*, 329 Ill. App. 3d 224, 226 (2002) ("A reviewing court has the obligation to satisfy itself of not only its own jurisdiction but also that of the lower court in the case under review."); *People v. Smith*, 228 Ill. 2d 95, 106 (2008) ("We take this opportunity to remind our appellate court of the importance of ascertaining whether it has jurisdiction in an appeal."). This obligation is all the more critical when an appeal involves novel constitutional issues, which we decide "only as a last resort." *People v. Bass*, 2021 IL 125434, ¶ 30.

¶ 46                                  1. *Statutory Background*

¶ 47 To properly explain the unusual jurisdictional issue and how it arose in this case, we must distinguish between several overlapping Illinois statutes intended to protect a victim of a sexual assault from being contacted by the defendant who allegedly committed the sexual assault. See *People v. Deleon*, 2020 IL 124744, ¶ 48 ("Through the enactment of a myriad of statutes, the General Assembly has sought to provide comprehensive protection to those affected by domestic violence, stalking, and sexual assault."). Consistent with the facts of this case, we refer to the victim as female and the defendant as male, but we recognize that sexual assault is not limited to these circumstances. See *People v. Dabbs*, 239 Ill. 2d 277, 293 n.2 (2010) (recognizing that "domestic violence may also be perpetrated by a woman against a man or by a man or a woman against a member of the same sex").

¶ 48        When the defendant is arrested and charged with sexual assault, the trial court may impose a condition of pretrial release requiring him to "[r]efrain from approaching or communicating with particular persons," such as the alleged victim. 725 ILCS 5/110-10(b)(3) (West 2022). When, as in this case, "the victim is a family or household member ***, conditions *shall* be imposed at the time of the defendant's release that restrict the defendant's access to the victim," including a 72-hour no contact condition unless the court orders otherwise. (Emphasis added.) *Id.* § 110-10(d). Any condition of pretrial release necessarily dissolves if the prosecution is dismissed or the defendant is acquitted; there can be no pretrial release without an impending criminal trial.

¶ 49        If the defendant is convicted and imprisoned, he may not communicate with the victim if she "has notified the Department [of Corrections] that *** she does not wish correspondence from the inmate." 730 ILCS 5/3-8-7.5(a) (West 2022); see 20 Ill. Adm. Code 504.Appendix A (2017) (No. 301) (making such communications a disciplinary offense for inmates). After the term of imprisonment, the defendant will serve a term of mandatory supervised release, during which the Prisoner Review Board may require him to "refrain from having any contact *** with certain specified persons including, but not limited to, the victim *** without the prior written approval of an agent of the Department of Corrections." 730 ILCS 5/3-3-7(b-1)(8) (West 2022).

¶ 50        Of course, these criminal remedies are available to the victim only if the State has initiated a criminal prosecution, a decision that rests with the state's attorney and depends on many factors beyond the victim's control. In response to this lack of autonomy for the victim, the legislature adopted the Civil No Contact Order Act (Act) (740 ILCS 22/101 *et seq.* (West 2022)). See *Deleon*, 2020 IL 124744, ¶ 50 ("Clearly, the [Act] was enacted in contemplation of protection

- 20 -

for victims who may have failed to or been fearful of reporting the crime in a timely manner, or where the State declines prosecution."). As its name suggests, a civil no contact order is "a civil remedy requiring only that the offender stay away from the victim." 740 ILCS 22/102 (West 2022). " 'Stay away' means to refrain from both physical presence and nonphysical contact with the [victim] directly, indirectly, or through third parties who may or may not know of the order." *Id.* § 103; see *id.* § 213 (enumerating specific remedies intended to accomplish this purpose). The victim may seek an emergency or plenary civil no contact order in a civil action independent from any criminal prosecution. *Id.* § 202(a)(1). Under the Act, the decision whether to seek a civil no contact order in an independent action rests solely with the victim; the State has no role. See *id.* §§ 201(b), 202(b).

¶ 51                    2. *Civil No Contact Orders in Criminal Prosecutions*

¶ 52             Alternatively, an action for a civil no contact order may be "commenced *** in conjunction with *** a criminal prosecution as provided in Article 112A of the Code of Criminal Procedure of 1963." *Id.* § 202(a)(2). Section 112A-2.5 of the Code describes such a civil no contact order as a "protective order[ ] *** entered in conjunction with *** a criminal prosecution." 725 ILCS 5/112A-2.5 (West 2022). The terminology used in article 112A of the Code is not entirely uniform, but in general, the named victim is called the "petitioner," the defendant is called the "respondent," an emergency civil no contact order is called an "*ex parte* protective order," and a plenary civil no contact order is called a "final protective order." *Id.* § 112A-3(c); see *id.* §§ 112A-3(c)(4), 112A-4(a-5) (indicating that "petitioner" may also refer to "any family or household member of the named victim" and "any employee of or volunteer at a rape crisis center"). The supreme court has recognized that in a conjoined action, "different burdens and procedures may

appropriately be required for the issuance of the protective order." *Deleon*, 2020 IL 124744, ¶ 51. Those procedures are as follows.

¶ 53 The conjoined action commences with the filing of a petition, which may be filed at any time after the criminal charge is filed and before (1) the defendant completes his sentence or (2) the criminal case is resolved other than by conviction. 725 ILCS 5/112A-5.5(a) (West 2022). "The petition shall be in writing and verified or accompanied by affidavit and shall allege that *** respondent has engaged in non-consensual sexual conduct or non-consensual sexual penetration, including a single incident of non-consensual sexual conduct or non-consensual sexual penetration with petitioner." *Id.* § 112A-5(a). "The petition shall indicate whether an *ex parte* protective order, a [final] protective order, or both are requested." *Id.* § 112A-5(a-5).

¶ 54 The petitioner may file the petition herself, or the State may file the petition on her behalf if (1) she is a minor, (2) she is an adult but cannot file the petition "because of age, disability, health, or inaccessibility," or (3) "[she] requests the State's Attorney to file the petition on [her] behalf." *Id.* § 112A-4.5(b)(2), (d). The State may decline such a request if "the State's Attorney has a good faith basis to delay filing the petition," although the State cannot prevent the petitioner from then filing the petition in conjunction with the criminal prosecution herself. *Id.* § 112A-4.5(d). The petitioner "may retain an attorney to represent [her] on [her] request for a protective order," but "[t]he attorney's representation is limited to matters related to the petition and relief authorized under this Article [112A]." *Id.* § 112A-4.5(d-5). Therefore, while article 112A of the Code differs from the Act because it contemplates a limited role for the State in a conjoined action, the core feature of the Act is retained: the decision whether to seek a civil no contact order, either directly or through the state's attorney, rests with the victim.

¶ 55    A petition for an *ex parte* protective order may be considered and granted without notice to the respondent, but the order remains in effect only "until the court considers the request for a final protective order after notice has been served on the respondent or a default final protective order is entered, whichever occurs first." *Id.* § 112A-17.5(i). A "request for a final protective order can be considered at any court proceeding in the *** criminal case after service of the petition." *Id.* § 112A-5.5(f). However, "the court shall afford the petitioner and respondent an opportunity to be heard on the remedies requested in the petition" for a final protective order. *Id.* § 112A-11.5(d). "If the petitioner has not been provided notice of the court proceeding at least 10 days in advance of the proceeding, the court shall schedule a hearing on the petition and provide notice to the petitioner." *Id.* § 112A-5.5(f). Whether an *ex parte* or a final protective order is sought, "an information, complaint, [or] indictment *** charging *** a sexual offense" constitutes *prima facie* evidence sufficient to warrant issuance of the order. *Id.* § 112A-11.5(a)(1). The defendant may rebut this evidence only by presenting evidence of a meritorious defense. *Id.* § 112A-11.5(a-5).

¶ 56    A protective order takes effect immediately upon issuance and is enforceable against the defendant as soon as he has actual knowledge of its contents. *Id.* § 112A-23(d)); its enforceability is not affected by "[a]ny finding or order entered in [the] conjoined criminal proceeding" (*id.* § 112A-23(e)(2)). However, the duration of a final protective order entered during pretrial release is affected by specified events in the criminal case. See *id.* § 112A-20. If the criminal prosecution is resolved other than by conviction, the final protective order will be vacated unless, "at the request of the petitioner, petitioner's counsel, or the State's Attorney on behalf of the petitioner, it [is] treated as an independent action" (*id.* § 112A-22.3(a)), in which case "the order's duration may be for a fixed period of time not to exceed 2 years" (*id.* § 112A-20(b)(1)). If

the defendant is convicted, then the final protective order remains in effect "until 2 years after the expiration of any supervision, conditional discharge, probation, periodic imprisonment, parole, aftercare release, or mandatory supervised release." *Id.* § 112A-20(b)(3). If the defendant's conviction is for certain specified sex offenses, the final protective order may be made permanent at the victim's request. *Id.* § 112A-20(b)(6). A final protective order may be modified after 30 days "only when changes in the applicable law or facts since that final order was entered warrant a modification of its terms." *Id.* § 112A-24(c).

¶ 57    Critically, a civil no contact order applies in addition to the other measures available to the court for the protection of the victim in a criminal prosecution, so a defendant may be subject to a civil no contact order even if he is also prohibited from contacting the victim as a condition of pretrial release, probation, imprisonment, or mandatory supervised release. See *id.* § 112A-14.5(a) (providing that the remedies in a civil no contact order "shall be in addition to other civil or criminal remedies available to [the] petitioner"). Of particular significance to this case, violation of a civil no contact order is an independent criminal offense. 720 ILCS 5/12-3.8 (West 2022). Therefore, a defendant subject to a civil no contact order as well as a no contact condition of pretrial release faces more severe consequences for the same improper conduct than a defendant subject to a no contact condition alone.

¶ 58    Despite these many connections with the criminal prosecution, section 112A-6.1(a) of the Code still treats the conjoined action as a civil proceeding:

> "Any proceeding to obtain, modify, re-open, or appeal a protective order and service of pleadings and notices shall be governed by the rules of civil procedure of this State. The Code of Civil Procedure and Supreme Court and local

court rules applicable to civil proceedings shall apply, except as otherwise provided by law." 725 ILCS 5/112A-6.1(a) (West 2022).

The legislature's effort to combine a civil no contact order proceeding with a criminal prosecution, while laudable as an effort to provide comprehensive protection to victims, presents a multitude of difficult jurisdictional questions for this court, not just because of the fundamental differences between civil and criminal proceedings, but because the Act was expressly intended to function independently from criminal proceedings.

¶ 59                                  3. *Jurisdiction*

¶ 60          A conjoined action for a civil no contact order does not fall neatly into the existing rules governing this court's jurisdiction in either civil or criminal appeals. On one hand, the conjoined action does appear civil; the enforceability of the protective order is unaffected by the criminal prosecution, and the *relative* duration of the protective order—two years beyond the conclusion of all aspects of the defendant's sentence—is unaffected by the defendant's sentence. On the other hand, the conjoined action appears criminal; the State, rather than the petitioner as a private individual, obtains the protective order on the victim's behalf, and the *total* duration of the protective order is determined by the length of the defendant's sentence, which in turn rests on the validity of his conviction. It is fundamentally bizarre to require a defendant to comply with one set of rules to challenge the validity of an order and an entirely different set of rules to challenge its duration. Compare Ill. S. Ct. R. 303 (eff. July 1, 2017) (governing perfection of appeals in civil cases) with Ill. S. Ct. R. 606 (eff. Mar. 12, 2021) (governing perfection of appeals in criminal cases). This bifurcation of validity and duration raises the additional question of whether and to what extent compliance with Rule 606 can excuse noncompliance with the more stringent requirements of Rule 303. Even if we entirely set aside the rules governing criminal appeals, as

the legislature would have us do (see 725 ILCS 5/112A-6.1(a) (West 2022) (stating that the rules pertaining to civil appeals apply to civil protective orders)), a final protective order entered during pretrial release is not easily categorized as either an interlocutory injunction or a final order under the rules governing civil appeals. See Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017) (making interlocutory injunctions appealable); *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 222 (2000) ("[A] permanent injunction is a final order, appealable only pursuant to Supreme Court Rules 301 or 304.").

¶ 61 Ultimately, the resolution of these difficult questions must wait for another appeal because the jurisdictional defect in the present case rests with the trial court and not this court, as we will explain. Irrespective of which supreme court rule might otherwise have provided the correct avenue for a direct appeal, such an appeal would have been available only if the trial court had jurisdiction; " '[i]f [the] trial court did not have jurisdiction, the parties [could] not confer jurisdiction on [the] reviewing court merely by taking an appeal.' " *KT Winneburg, LLC v. Calhoun County Board of Review*, 403 Ill. App. 3d 744, 747 (2010) (quoting *Greer v. Illinois Liquor Control Comm'n*, 185 Ill. App. 3d 219, 221 (1989)). Even so, "[a] ruling made by a circuit court in the absence of subject matter jurisdiction is void" (*People v. Flowers*, 208 Ill. 2d 291, 306 (2003)) and "may be attacked at any time or in any court, either directly or collaterally," provided that "the issue of voidness must be raised in the context of a proceeding that is properly pending in the courts" (*id.* at 308). As with other jurisdictional matters, we have an obligation to raise the issue *sua sponte*. See *Schak v. Blom*, 334 Ill. App. 3d 129, 134 (2002) ("Courts have a duty to vacate and expunge void orders from court records and thus may *sua sponte* declare an order void.").

¶ 62　　　　　　Defendant's criminal appeal is properly pending in this court; his final judgment of conviction became appealable when the trial court denied his motion to reconsider his sentence on May 10, 2023, and he perfected his appeal by filing his notice of appeal on May 17, 2023, within 30 days of that order. Ill. S. Ct. R. 606(b) (eff. Mar. 12, 2021). As such, we have the power to vacate void orders entered in this case. See *Flowers*, 208 Ill. 2d at 308 (citing Ill. S. Ct. R. 615(b) (eff. Jan. 1, 1967)); *Moffat Coal Co. v. Industrial Comm'n*, 397 Ill. 196, 201 (1947) ("A judgment, order or decree of a court that lacked jurisdiction or one that is void for any other reason will be reversed by this court whenever the same is brought before us by any means possible in the particular case ***."). We may vacate void orders "when the jurisdictional defect [is] apparent from the face of the record at the time that the challenged order was entered." *In re Custody of Ayala*, 344 Ill. App. 3d 574, 583 (2003). The protective orders in this case fit the bill.

¶ 63　　　　　　Under the Illinois Constitution, the "Circuit Courts shall have original jurisdiction of all justiciable matters" except in specific circumstances not relevant here. Ill. Const. 1970, art. VI, § 9.

> "Generally, a 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests. [Citations.] The legislature may create new justiciable matters by enacting legislation that creates rights and duties that have no counterpart at common law or in equity." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002).

A civil no contact order is a kind of injunction, so an action for a civil no contact order, like a traditional action in equity for an injunction, is a justiciable matter touching upon the adverse legal

- 27 -

interests of the petitioner and the defendant. See *In re A Minor*, 127 Ill. 2d 247, 261 (1989) (quoting *Wangelin v. Goe*, 50 Ill. 459, 463 (1869)) (describing what constitutes an injunction).

¶ 64 Furthermore, the trial court's jurisdiction to hear a particular controversy in this general class of cases must be invoked; "in order to invoke the subject matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, must present a justiciable matter." *Belleville Toyota*, 199 Ill. 2d at 334. The bar for a petition to present a justiciable matter is extremely low: "the *only* consideration is whether the alleged claim falls within the general class of cases that the court has the inherent power to hear and determine. If it does, then subject matter jurisdiction is present." (Emphasis in original.) *In re Luis R.*, 239 Ill. 2d 295, 301 (2010).

¶ 65 However, the victim's complete failure to file a petition, or the State's failure to file one at her request, means that no claim whatsoever has been made; this fails to invoke the trial court's subject-matter jurisdiction. *Belleville Toyota*, 199 Ill. 2d at 335 (citing *Ligon v. Williams*, 264 Ill. App. 3d 701, 707 (1994)); see *People ex rel. Graf v. Village of Lake Bluff*, 206 Ill. 2d 541, 554 (2003) ("*Once a justiciable matter is properly submitted*, a court has the power to decide rightly or wrongly the issues properly before it." (Emphasis added.)). When the trial court nevertheless purports to adjudicate the parties' rights by granting unrequested relief *sua sponte*, it has acted in the absence of a justiciable matter, and its adjudication is void for lack of jurisdiction. See *Ligon*, 264 Ill. App. 3d at 711; *In re Estate of Rice*, 77 Ill. App. 3d 641, 656 (1979); see also *People ex rel. Christiansen v. Connell*, 2 Ill. 2d 332, 348 (1954) (*per curiam*) (explaining that the judicial power cannot be exercised when "there is nothing pending before the court to be decided").

¶ 66 Defendant points out, and the State concedes, that no petition for a civil no contact order was ever filed with the trial court. Even if we assume for the sake of argument that any kind of oral or written request could have served as a substitute for jurisdictional purposes, neither the

victim nor the State at her request even *asked* for a civil no contact order at defendant's first appearance. The court explained that it would enter a no contact condition of bond, which was an appropriate exercise of its authority regarding bail given that O.M. was alleged to be a member of defendant's family or household. See 725 ILCS 5/110-10(d) (West 2022), but it did not just enter the no contact condition of bond; it went on to enter the final civil no contact order *sua sponte*. This was error.

¶ 67 In reaching this conclusion, we reject the proposition that the State's charging instrument, which identified the victim and invoked "the [trial] court's subject matter jurisdiction over a justiciable criminal matter" (*People v. Hughes*, 2012 IL 112817, ¶ 21), also invoked the trial court's jurisdiction to enter a civil no contact order in the criminal prosecution. We recognize that "in granting jurisdiction over 'all justiciable matters,' the Illinois Constitution does not distinguish between civil and criminal cases." *People v. Castleberry*, 2015 IL 116916, ¶ 18 (quoting Ill. Const. 1970, art. VI, § 9). However, the current statutory framework compels the conclusion that an action for a civil no contact order is a separate justiciable civil matter involving the legal relations and adverse interests of the petitioner and the defendant in which the State may choose to play a limited role, and *only* at the petitioner's request. The record here does not show that any such request was made.

¶ 68 *Ligon* is instructive on this point. See *Belleville Toyota*, 199 Ill. 2d at 334-35 (citing *Ligon* favorably when addressing the justiciable matter requirement under the current Illinois Constitution). In *Ligon*, the state's attorney filed a complaint at the request of the plaintiff mother to establish a parent-child relationship between the defendant father and their daughter, with the goal of having defendant pay the mother child support. *Ligon*, 264 Ill. App. 3d at 702. Under the relevant statute, the state's attorney was explicitly prohibited from representing the mother in

custody matters. *Id.* at 708 (citing 750 ILCS 45/18(b) (West 1993)). The trial court held a hearing at which an assistant state's attorney and the defendant were present but the plaintiff was absent because she had not received notice of the hearing. The court found that a parent-child relationship existed as plaintiff requested, but it then went on to award custody of the child to the defendant, even though "[p]laintiff sought no relief pertaining to custody and defendant filed no petition or counterclaim seeking custody." *Id.* On appeal, this court found that the trial court acted without jurisdiction in adjudicating the issue of custody *sua sponte*, even though the issue could have been raised in the same proceeding under the then-existing statutory framework. *Id.* at 708-09 (citing 750 ILCS 5/601 (West 1993)).

¶ 69        A similar discrepancy between parties and claims is present here. The state's attorney brings criminal charges not on behalf of the named victim, but on behalf of the people of the State of Illinois. 55 ILCS 5/3-9005(a)(1) (West 2022). As a private citizen, the victim can neither require the state's attorney to file charges nor prevent the state's attorney from filing charges; " '[t]he filing of criminal charges is a discretionary matter resting within the exclusive jurisdiction of the prosecution.' " *People v. Page*, 2022 IL App (4th) 210374, ¶ 43 (quoting *People v. Flanagan*, 201 Ill. App. 3d 1071, 1076 (1990)); see *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). With respect to the civil no contact order, the petitioner (either the victim or someone empowered to act on her behalf) can request but cannot require the state's attorney to file the petition. See 725 ILCS 5/112A-4.5(d) (West 2022). The State, for its part, cannot prevent the petitioner from commencing the action for a protective order in conjunction with the criminal prosecution (see *id.* § 112A-4.5(b)(1), (d)) and cannot terminate the conjoined action by terminating the criminal prosecution (*id.* § 112A-22.3(a)).

¶ 70        Although the indictment in the criminal prosecution can supply the evidentiary basis for the civil no contact order, this is not dispositive of the jurisdictional analysis. In *Ligon*, the trial court lacked jurisdiction to adjudicate the question of custody *sua sponte* even though it indisputably had jurisdiction to adjudicate the predicate question of whether a parent-child relationship existed between the defendant and his daughter. *Ligon*, 264 Ill. App. 3d at 708; *cf. People ex rel. Hartrich v. 2010 Harley-Davidson*, 2018 IL 121636, ¶¶ 24-25 (noting that the trial court may examine criminal culpability in an *in rem* civil forfeiture proceeding even in the absence of an *in personam* criminal prosecution). The issue is not just whether the court has the power to grant relief under the statute; it is whether the proceedings seeking such relief have been validly initiated.

¶ 71        Furthermore, holding that the State's charging instrument could obviate the need for a petition on the victim's behalf would present serious constitutional concerns, including whether the victim would then be rendered a party to the criminal prosecution notwithstanding section 8.1(b) of article I of the Illinois Constitution (Ill. Const. 1970, art. I, § 8.1(b)) and whether the trial court would have *personal* jurisdiction over the victim despite having subject-matter jurisdiction over the criminal prosecution. See *In re M.W.*, 232 Ill. 2d 408, 426 (2009) ("[A] petitioner or plaintiff submits to the jurisdiction of the court by filing a petition or complaint, 'thereby seeking to be bound to the court's resolution' thereof.") (quoting *Owens v. Snyder*, 349 Ill. App. 3d 35, 40 (2004)). Accordingly, we take the legislature at its word and conclude that the action for a civil no contact order is a separate justiciable matter merely conjoined with, rather than coextensive with, the criminal prosecution. See *Oswald v. Hamer*, 2018 IL 122203, ¶ 32 ("We presume that the legislature enacts statutes in light of the constitution.").

¶ 72    Because the trial court's subject-matter jurisdiction was not invoked, the final civil no contact order was void, and the court's extension of the order was likewise void, notwithstanding any subsequent waiver or acquiescence on defendant's part. See *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998) ("If jurisdiction is lacking, any subsequent judgment of the court is rendered void and may be attacked collaterally."); *Klopfer v. Court of Claims*, 286 Ill. App. 3d 499, 505 (1997) ("Defects in subject matter jurisdiction cannot be waived [citations], and the parties to an action cannot confer such jurisdiction by their acquiescence or consent."). We note that our conclusion might differ if defendant had acquiesced in the entry of a renewed protective order as opposed to the extension of a void order. *Cf. Municipal Trust & Savings Bank v. Moriarty*, 2021 IL 126290, ¶ 25 (holding that waiving an objection to personal jurisdiction operated prospectively but did not retroactively validate void orders).

¶ 73    We emphasize that our holding is narrow; a final protective order is void for lack of subject-matter jurisdiction only when "the question ha[s] not been properly presented to the court in *any* form of recognized legal procedures." (Emphasis added.) *Estate of Rice*, 77 Ill. App. 3d at 656. A petition seeking a protective order, even if it is legally defective or violates the statute's procedural requirements, will not deprive the trial court of subject-matter jurisdiction; "the *only* consideration is whether the asserted claim, legally sufficient or not, was filed in the proper tribunal." (Emphasis in original.) *Luis R.*, 239 Ill. 2d at 303; see *In re Custody of Sexton*, 84 Ill. 2d 312, 321 (1981) (finding that the filing of an affidavit was not a jurisdictional prerequisite). Nevertheless, the victim, or someone authorized to act on her behalf, must file a petition for such relief before the court has subject-matter jurisdiction to resolve this particular justiciable matter involving her interests.

¶ 74     In deciding this appeal, we are not reaching the merits of defendant's constitutional arguments. See *Flowers*, 208 Ill. 2d at 307 ("A void order does not cloak the appellate court with jurisdiction to consider the merits of an appeal."). Although we recognize that "precepts of constitutional due process" are implicated when trial courts "attempt to resolve controversies which have not been properly presented to them" (*Estate of Rice*, 77 Ill. App. 3d at 656-57), those precepts only come into play if the court's authority to resolve the controversy has actually been invoked. *Cf. People v. Benitez*, 169 Ill. 2d 245, 256 (1996) ( "[A] charging instrument which fails to charge an offense does not deprive the circuit court of jurisdiction" but may nevertheless be invalid "where there has been a clear denial of due process."). In other words, we need not consider whether an order that is void for lack of subject-matter jurisdiction would also constitute a denial of the defendant's constitutional rights if the order were not void. See *Ligon*, 264 Ill. App. 3d at 710 (declining to resolve a party's constitutional due process argument when the challenged judgment was void). Similarly, the question of subject-matter jurisdiction does not turn on compliance with statutory procedures (see *Luis R.*, 239 Ill. 2d at 302), so we decline to address the extent to which compliance with those procedures may be necessary as a matter of constitutional due process. Finally, we decline to consider whether an action for a civil no contact order commenced in conjunction with a criminal prosecution implicates the defendant's sixth amendment right to the assistance of counsel, and by extension, the United States Supreme Court's decision in *Strickland*.

¶ 75                          III. CONCLUSION

¶ 76     " '[C]ourts are essentially passive instruments of government.' [Citation.] They 'do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the

parties.' " *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in the denial of rehearing *en banc*)). Although we have no doubt that the entry of the civil no contact order was motivated by an interest in protecting the victim of these violent sexual assaults, the legislature has left the decision whether to seek a civil no contact order with the victim, the person best equipped to assert her interests. While article 112A of the Code provides the trial court with broad authority to act immediately when a civil no contact order is requested in conjunction with a criminal prosecution, the court may not act sooner without assuming the role of an advocate on the would-be petitioner's behalf. *Cf. In re Marriage of Britton*, 2022 IL App (5th) 210065, ¶ 42 (vacating the trial court's order as void where the court did not enforce prior order as requested but instead modified it *sua sponte* to afford additional relief).

¶ 77        For the reasons stated, we affirm the trial court's judgment of conviction and sentence, but we vacate the civil no contact order and the extension of that order. This disposition affects only the civil no contact order and not any other conditions of defendant's sentence or incarceration.

¶ 78        Judgment affirmed; orders vacated.